92   157
163   191

The Cairo and St. Louis Railroad Company

*v.*

Frances E. Warrington.

1. Constitutional law—*legislative power.* The legislature of a State may enact any and all laws on any and every subject, unless restricted by the delegation of the power to the General Government, or its power has been limited by the Federal or State constitution.

2. Same—*law making railroads liable for double the value of stock killed.* The statute of 1874, which makes every railroad company neglecting, within six months after their roads are open for use, to fence the same and maintain the fence, liable for double the amount of the damages inflicted by their agents, engines or cars on cattle, etc., getting upon their track, is a constitutional and valid enactment. *

3. Same—*penalties for neglecting to fence railroads.* The legislature may, as a police regulation, compel railroad companies to fence their tracks, and this may be done by the imposition of fines, penalties or forfeitures; and a law providing for a penalty or forfeiture for the violation or non-observance of such a police regulation, which is given to the owner of stock killed, is not in contravention of the constitutional provision that "no person shall be deprived of life, liberty or property without due process of law."

---

*To the same effect is *The Cairo and St. Louis Railroad Co.* v. *Peoples, ante,* p. 97.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. JUDD & WHITEHOUSE, for the appellant.

Mr. W. WINKELMAN, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This action was brought before a justice of the peace, to recover double the value of a cow killed by the engine of the railroad company in 1875. Plaintiff recovered a judgment before the justice for $100, and the company appealed to the circuit court, where a trial was had with a like recovery. It appears that the judgment was for double the value of the property killed. The case is brought here on appeal, and a reversal is urged.

It is claimed that the law giving double the value of the property destroyed as the damages that plaintiff may recover, is unconstitutional. The law involved took effect on the 1st day of July, 1874. (See Rev. Stat. 1874, sec. 1, p. 807.) It, in substance, provides, that every railroad company shall, within six months after its road is open for use, erect and maintain fences on both sides of its road, as therein provided; and a failure to comply with the requirement renders such railroad company liable for double the amount of the damage inflicted by the agents, engines or cars of such corporation on cattle, horses, sheep, hogs, or other stock thereon. The act, however, contains an exception which exempts these companies from fencing in incorporated towns, villages, at road crossings, etc.

As far as railroad companies under this section of the law are concerned, the decision of this question is of but little consequence beyond the present case, as the General Assembly repealed it at the session of 1877. But it possesses importance in reference to many similar enactments found in our statute books.

In our form of government its powers are distributed amongst different classes of magistracy. But the supreme power of enacting laws for the government of the people is conferred upon and confided to the General Assembly, and the power of that body in enacting laws is only limited by constitutional restriction. It is the generally received doctrine, that the General Assembly may enact any or all laws on any and every subject, unless restricted by the delegation of the power to the General Government, or its power has been limited by the Federal or State constitution; and in passing laws for the government of the people, that body has the same power to select the means for compelling their observance by sanctions they may impose. And unless the power to pass this law has been prohibited, or the sanction unauthorized, it must be upheld and enforced.

That the General Assembly may, as a police regulation, compel these companies to fence their tracks, is fully established by repeated decisions of this court. It is, however, urged, that the imposition of this penalty contravenes the second section of the "bill of rights" in our constitution, which provides that "no person shall be deprived of life, liberty or property without due process of law;" that this penalty takes the property of the company and gives it to the owner of the property destroyed; that when he receives the value of his property he is fully compensated for his loss, and that all over that amount is taken from the company and given to him without due process of law, and this being the case, the law, to that extent, is void.

The power to impose fines, penalties and forfeitures for a violation of or the non-observance of statutory requirements, is believed to be coeval with the common law itself. The power has been at all times exercised by the British parliament, and has been employed by the General and State governments since their foundation, as a means of enforcing obedience. The power was, it is believed, exercised by the colonies before they became States, and was then and is now considered as

being in the due course of law. The exercise of this power is not new, but was in general practice at the time the first of our constitutions of government were adopted, and had been for centuries before; and the exercise of that power, so long and so generally recognized, has never been challenged, so far as our knowledge extends. We therefore regard the power of the General Assembly to impose fines, penalties and forfeitures as undeniable, especially as a police regulation. And this may be done as well on corporate bodies as on individuals.

The statute books of Great Britain and of the various States of the Union abound with such enactments. They give popular or *qui tam* actions to recover forfeitures for the omission or violation of duty. In some cases the penalty is given to the informer, in others one-half to the government and the other half to the informer, or one-half to the informer and the other half to some charity or specific fund. We are aware of no case since the organization of our government, State or Federal, which has questioned the power of the legislature to thus dispose of a penalty or forfeiture. All must concede that when the General Assembly imposes a forfeiture, that body may dispose of it in such manner as in their wisdom they may see proper. They may appropriate such penalties to the general revenue of the State, to the school or other fund, general or local, or to a private person. This, it is believed, has never been questioned.

If the power to require railroad companies, as a police regulation, to fence their roads is constitutional,—and we have seen it is,—then it must follow that the General Assembly is armed with ample power to adopt such means as will compel a compliance with the requirement. When such requirements are made of individuals, they may unquestionably be enforced by penalties or forfeitures; and no valid reason is perceived why the same power may not be exerted to compel a compliance by corporate bodies. If the forfeiture of a sum equal to the value of the property destroyed is a penalty, there can be no question of the competency of the legislature to impose it

for a failure to comply with the law. This forfeiture of a sum over and above the value of the property equal to that sum, although not called a penalty by the act, is, in all essential particulars, a penalty. It would have been no more so had it been so named.

The policy of this law is apparent. It is to protect the public against injury incident to collisions between the trains and animals being on the track. To accomplish this the companies are required to fence their roads; and to compel obedience to the requirement, the penalty is imposed for a non-compliance. It is true, other means more stringent, or lighter in their character, might have been adopted; but the means was in the choice of the law-making power.

As illustrative of the exercise of such power we may refer to some of the enactments by our General Assembly. An action is given to any defendant in execution to recover double the value of property exempt from levy and sale on execution, when seized by an officer having such a writ. Also, to recover from a ferryman the money paid, and a penalty of five dollars, for charging more than legal tolls for ferrying the injured party. Also, a forfeiture of three dollars and all damages sustained, by reason of a ferryman failing to perform his duty. The judgment and execution law gives an action to the debtor in execution, against an officer, in five times the actual damage sustained, for a fraudulent sale, or such a return of a sale by the officer making the same. The chapter entitled "Mines" gives a penalty of $500, in addition to the damages sustained, to the owner of mineral lands, by a trespass in removing his mineral. So of the chapter entitled "Mortgages," where the owner mortgages personal property, and afterwards sells it without giving notice to the purchaser that it is mortgaged, an action is given to the purchaser to recover double the value of the property thus sold. A penalty of not less than $10 nor more than $100 is given, in addition to the damage done, for tearing down fences of railroads, for leaving gates or bars open at road crossings, or leaving horses, etc., standing at farm

11—92 Ill.

crossings.   Also, treble damages, and a forfeiture of not less than $25 nor more than $1000, by a railroad company refusing to transport passengers or property at the regular time and place.   And penalties are given to the party aggrieved for a failure of a railroad company to furnish brakemen, or when the operation of brakes is not properly controlled by power from the engine.   The chapter entitled "Recorders" gives a penalty, and an action to recover damages of any person, for a violation of the provisions, of section 28 of the act; and under the statute a sheriff is rendered liable to a forfeiture of a sum equal to five times the interest, for an unreasonable neglect to pay money collected by him, to be sued for and recovered by the person entitled thereto.   A penalty of $8 is given for each tree, against any person wrongfully cutting or destroying the same.   The statute also gives double the amount of property taken or not given by false weights, and a penalty is also inflicted by the act.

If these enactments do not establish the constitutionality of the law under consideration, they do show that the Legislative and Executive departments of the government have, since its foundation, supposed such legislation is not inhibited by the fundamental law.   Those departments are under the same obligation to observe and conform to constitutional requirements as is the Judicial branch of the government.   And the validity of such laws not having been questioned for such a long series of years, is no light consideration in passing on the validity of a law.

We are referred to the case of *Atchison and Nebraska Railroad Co.* v. *Baty,* 6 Neb. 37, which holds a similar enactment unconstitutional.   Whilst we entertain a high respect for that court, we are unable to yield assent to the conclusion it has reached.   In fact, we have no hesitation in holding that the law under consideration in no sense deprives appellant of its property without due process of law, any more than does a law which imposes a penalty or fine for the violation of any other police enactment.   It is but a forfeiture exacted for the

neglect of a duty imposed for the welfare and protection of community from wrong or injury. We can not believe that the power of the General Assembly is so limited as to be unable to afford this protection by such or even severer enactments, deemed necessary to enforce the duty. We must, therefore, hold this law constitutional.

It is urged that the evidence fails to show that the animal was killed outside of the limits of an incorporated village, or not at the crossing of a public road or highway. The evidence on this point, as preserved in the record, is not of that clear and satisfactory character as to leave no doubt in the mind, but there is evidence from which we think the jury were warranted in finding the animal was not killed at either of these places. One witness testified that there was no fence at the place where the cow was killed, on either side of the track, and that East Carondelet was not incorporated; that the killing occurred between the house of witness and the station. Another testified that the place where the animal was killed was not in an incorporated city. The first of these witnesses testified that she resided in East Carondelet; saw the cow killed, and it was not more than two hundred yards from the house of witness, and was between there and the station. From this evidence it may be reasonably inferred that the cow, if killed in East Carondelet, was at a place not excepted by the statute, as it was shown not to have been incorporated, and that the road was not fenced at the place.

It is true no witness in terms testified that the accident did not occur at a road crossing; but one witness says that there was a wagon crossing about two hundred yards from the place. This is an indirect manner of saying there was none nearer at that place. This evidence warranted the jury in the inference that the cow was not killed at a road crossing.

All the evidence considered, we are of opinion it sustains the verdict, and the judgment of the court below is affirmed.

*Judgment affirmed.*