## GEORGE W. CHRISTY

### v.

## PARKER ELLIOTT.

*Opinion filed June 23, 1905.*

1. APPEALS AND ERRORS—*when constitutionality of statute is involved.* The constitutionality of a statute upon which a count in a declaration is based may be presented for review even though there is no demurrer to the declaration nor any objection to the evidence upon that ground, where exception is taken to the ruling of the court in giving instructions stating the provisions of the statute and holding them to be the law, and the ruling is assigned as ground for allowing the motion for new trial.

2. CONSTITUTIONAL LAW—*Automobile act of 1903 is not class legislation.* The Automobile act of 1903, (Laws of 1903, p. 301,) which limits the speed of automobiles upon public highways and imposes certain duties upon drivers of automobiles, is a police regulation, and is not unconstitutional as class legislation.

3. SAME—*Automobile act of 1903 does not violate section 13 of article 4 of constitution.* The Automobile act of 1903, by providing that automobiles shall, under certain conditions, be brought to a full stop, does not violate the constitutional provision concerning titles of acts, since the title, "An act to regulate the speed of automobiles and other horseless conveyances upon the public streets, roads and highways of the State of Illinois," embraces the subject of stopping the automobile.

4. AUTOMOBILES—*act of 1903 construed.* Section 2 of the Automobile act of 1903, providing that the automobile driver shall stop "whenever it shall appear that any horse driven or ridden by any person * * * is about to become frightened," etc., means, whenever it might, *by the exercise of reasonable care and diligence* on the part of the driver of the automobile, appear to him that such horse is about to become frightened.

5. SAME—*right of owner of automobile to use highways.* The owner of an automobile has a right to use the highways of this State with the same provided he uses reasonable care and caution for the safety of others and does not violate the law of the State.

6. SAME—*duty of an automobile driver to stop does not depend upon signal.* The duty of the driver of an automobile to stop his machine when horses are frightened does not depend upon his receiving a signal from some person in charge of such horses.

7. ABSTRACT OF RECORD—*when an abstract of record violates the rules.* An abstract of record which does not state the substance of the declaration nor make any reference thereto other than to state that there is a declaration on a certain page of the record, violates Supreme Court rule 14, requiring a "complete abstract or abridgment of the record, referring to the pages of the record by numerals on the margin."

APPEAL from the Circuit Court of Mercer county; the Hon. FRANK D. RAMSAY, Judge, presiding.

This is an action of trespass on the case, brought in the circuit court of Mercer county on June 30, 1904, by the appellee against the appellant to recover damages, resulting to plaintiff from an injury inflicted upon him by being thrown from a wagon, drawn by mules upon a public highway, by reason of said mules becoming frightened, and turning over said wagon, because of the alleged negligence of appellant in running an automobile, in which he was riding, in violation of the statute of Illinois in regard to automobiles, and in driving and managing said automobile in a careless, negligent and improper manner. The plea of the general issue was filed to the declaration, and the case was tried before the court and a jury. The jury returned a verdict in favor of appellee and against appellant for $1250.00. Motion for new trial was made and overruled, and judgment rendered upon the verdict.

The present appeal from the judgment, so entered by the circuit court, is prosecuted to this court upon the ground that the constitutionality or validity of the act, hereinafter referred to, to regulate the speed of automobiles, etc., is involved in this case.

The declaration consists of six counts. The first and third counts are based upon the statute prohibiting a greater rate of speed than fifteen miles an hour. The second and fourth counts are based upon that provision of the statute, which provides that automobiles should come to a full stop, when "it shall appear" that any horse or team, approaching

them in the highway, is frightened. The fifth and sixth counts are based on the common law grounds of negligence.

The material facts are substantially as follows: On June 23, 1904, appellee, in company with one William Parker, who was driving, and three old ladies, to-wit, Mary Parker, the mother of William Parker the driver, and Jane McMullen and Elizabeth McMullen, were driving south upon a highway leading into the village or town of New Windsor, which highway extended in a northerly and southerly direction on the line between Mercer and Henry counties. Appellee was riding on the front seat with Parker, the driver, and the three women were sitting on the back seat. The vehicle was an open spring wagon, and was drawn by a team of mules. Appellee and his companions were coming up over the brow of a hill about a mile and a half north of New Windsor, when they first saw the appellant coming north toward them in a seven-horse-power gasoline automobile about fifty-nine rods away. From the point where appellee and his companions first saw appellant to the point where appellant was then approaching them there was a level road to the south for over two hundred rods. North of the place, where the accident happened, the view was unobstructed for half a mile, except that there was a small hill opposite what is called in the evidence the Hoogner place, where there was a depression about twenty-five rods long. In the automobile were appellant with his son and daughter, and a friend of theirs, named Spivey. When the automobile came up to where the wagon was, the mules became unmanageable, the wheels of the spring wagon went into a ditch on the right or west side of the road; the mules veered sharply to the east and upset the wagon, throwing the occupants out, and ran away. Appellee's arm was broken by the fall, and it was claimed by him that one of his legs was injured. There is evidence tending to show that, as a result of the breakage of his arm, appellee had an enlarged joint and permanent deformity. When he first fell from the wagon, he was un-

216 –2

conscious, and lay in the road an hour, while waiting for a physician, who had been sent for. For some seventeen days he was confined to his bed, and for two and a half months thereafter could not walk without a cane or chair. There is testimony, tending to show that his leg was so severely injured that he could not bear the weight of his body upon it. Although the physicians testify that they could detect no broken bone in the leg, they state that they detected enlarged glands in the groin, but whether this enlargement of the glands in the groin proceeded from the accident, or from some other cause, is a matter about which the witnesses differ.

The testimony of the appellee tends to show that, when Parker, the driver, saw the machine coming, he tried to urge his team forward and around the head of the ditch to the west, so that he could leave the beaten track and get out to the extreme west side of the highway next to the hedge; that the team began to show signs of fright about as soon as they saw the automobile at the Wilcox place about fifty-nine rods away; that they began to jump and twist about as the driver tried to urge them on, and when the automobile was about six rods away, they "flew back" in their harness, and then lunged forward and to one side just as the machine came up to them, throwing the wheels of the vehicle into the ditch. On the other hand, the witnesses of appellant, who were the parties riding in the automobile, say that the team was standing still as the automobile passed them, and showed no signs of fright. After the accident appellant did not lessen the speed of his automobile, but went on without taking notice of the fact, that the parties were thrown from the wagon, although Gertrude Christy, the daughter of appellant, who was in the automobile with him, says that she looked back, and "saw the people out of the rig; I did not say anything to any one about what I had seen; I did not tell my brother, George, that the people were out of the rig."

The first count of the declaration alleges that the appellant was negligently and willfully driving and running said

automobile upon the highway in a northerly direction at a rate of speed greatly in excess of fifteen miles an hour, contrary to the statutes in such cases made and provided. The second count of the declaration alleges that, while the appellant was approaching the vehicle in which the appellee was traveling, it then and there appeared to the appellant that the horses attached to the vehicle were about to become frightened by the approach of the automobile, and that it was the duty of the appellant, as was then and there provided by law, to cause the automobile, so driven by the appellant, to come to a full stop until the horses had passed it.

On May 13, 1903, the legislature passed an act entitled "An act to regulate the speed of automobiles and other horseless conveyances upon the public streets, roads and highways of the State of Illinois." The first section of the act provides as follows: "That it shall be unlawful for any person or persons to drive, run, conduct or propel any automobile or any other conveyance of a similar type or kind used for the purpose of transporting or conveying passengers or freight, or any other purposes, whether said automobile or conveyance or such other vehicle is propelled by steam, gasoline or electricity or any other mechanical power, at a rate of speed in excess of fifteen miles per hour upon any road or highway in the State of Illinois 'or any other rate of speed established by ordinance of any city or village of said State, upon any street within such city (or) village:' *Provided,* that nothing in this section contained shall prohibit or prevent the running of such automobiles, or vehicles at a greater rate of speed than fifteen miles per hour upon such streets within incorporated cities or villages, as may be set apart for use of such automobiles and other conveyances, and upon which said cities or villages may, by ordinance, permit a greater or require a less rate of speed than herein specified." The second section of the act is as follows: "Whenever it shall appear that any horse driven or ridden by any person, upon any of said streets, roads or highways is about to become frightened

by the approach of any such automobile or vehicle, it shall be the duty of the person driving or conducting such automobile or vehicles to cause the same to come to a full stop, until such horse or horses have passed." The third section of the act provides that "any person or persons violating the provision of the foregoing section one (1) or two (2) shall upon conviction, be sentenced to pay a fine of not less than twenty-five (25) dollars nor more than two hundred (200) dollars, and may be confined in the county jail not to exceed three (3) months, or both, in the discretion of the court." The fourth section of the act provides that "in any action brought to recover any damages, either to person or property caused by running such automobiles or vehicles at a greater rate of speed than designated in section one (1), the plaintiff or plaintiffs shall be deemed to have made out a *prima facie* case, by showing the fact of such injury, and that such person or persons driving such automobiles or vehicles was, at the time of the injury, running the same at a speed in excess of that mentioned in section one (1)." (Sess. Laws of Ill. of 1903, pp. 301, 302).

GEORGE SHUMWAY, and W. T. CHURCH, for appellant.

WILLIAM J. GRAHAM, and HENRY E. BURGESS, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is strenuously insisted by the appellee that this court has no jurisdiction to entertain this cause, and that the appeal from the judgment of the circuit court should have been taken to the Appellate Court. The ground, upon which the cause is brought by the appellant to this court, is that the constitutionality of the act, regulating the speed of automobiles, etc., set forth in the statement preceding this opinion, is involved in the cause. The appellee contends that, inas-

much as the constitutionality of the act was not challenged or questioned by the appellant upon the trial below, nor until the written reasons were filed in support of the motion for new trial, the record is not in such condition as to present to this court the question of the constitutionality of the act. In the investigation of this subject we have entertained much doubt as to whether the case is properly here, and think there is much force in the position of appellee.

This court has held that the constitutionality of a statute may be raised by demurrer to the declaration. (*Shepherd* v. *City of Sullivan,* 166 Ill. 78; *Woodruff* v. *Kellyville Coal Co.* 182 id. 480). Here, however, no demurrer was filed to the declaration. This court has also held that the constitutionality of a statute may be raised by an objection to evidence offered under it. (*Pearson* v. *Zehr,* 125 Ill. 573). Here, no objection was made to the introduction of any testimony by the appellant upon the ground that the statute was unconstitutional, so far as the bill of exceptions shows. After the verdict was rendered, however, the appellant made a motion for new trial, and filed fifteen written reasons in support thereof. The fourteenth reason was as follows: "The court erred in the giving of instruction for plaintiff No. 1, as the act of 1903 to regulate the speed of automobiles is void." The fifteenth reason was as follows: "The court erred in the giving of plaintiff's instruction No. 4, as section 2 of the act of 1903 to regulate the speed of automobiles is void, not being expressed in the title of said act." The position of the appellee is, that the question of the constitutionality of the act could not be raised for the first time on motion for new trial, inasmuch as no ruling had been asked of the trial court upon this question during the progress of the trial.

Appellant, however, excepted to the giving of instructions numbered 1 and 4 in behalf of the appellee. Instruction numbered 1 told the jury that the statutes of this State provide that it shall be unlawful for any person to drive, run, conduct or propel any automobile, whether propelled by

steam, gasoline, or electricity, or any other mechanical power, at a rate of speed in excess of fifteen miles an hour upon any road or highway in the State, unless the same was within some village or city where such speed was allowed by ordinance; and also instructed them that if they found from the evidence, that, at the time the injuries in question occurred, the defendant was driving an automobile at a rate of speed in excess of fifteen miles an hour upon a public highway as described in the declaration, and that, on account of the defendant so driving such automobile, the plaintiff was injured, as alleged in the first count of the declaration, and was then and there exercising reasonable care and caution in that behalf, they should find for the plaintiff, etc. The exception, taken to the giving of this instruction, raised the question whether the instruction correctly stated the law or not, and if the act limiting the speed of automobiles to fifteen miles an hour was unconstitutional, then the instruction did not state the law correctly.

Instruction numbered 4, given in behalf of appellee, told the jury that, if they believed from the evidence that the appellant was driving the automobile along the public highway, and that it appeared to him, or might, by the exercise of reasonable diligence on his part have appeared to him, that the team of mules, drawing the conveyance in which the plaintiff was riding, was about to become frightened, and if they further found that the defendant did not thereupon cause the automobile to come to a full stop until said team had passed, and that plaintiff was himself exercising reasonable care and caution, and was injured by reason of the failure of the defendant to bring the automobile to a full stop, then the defendant was liable to the plaintiff for the loss and damage sustained by him by reason of such injuries, etc. The exception to the giving of this instruction raised the question whether or not it stated the law correctly, and if section 2 of the act is unconstitutional, for the alleged reason that the subject matter of the section is not expressed in the title of

the act, then instruction numbered 4 did not state the law correctly. If a demurrer to a declaration, which sets up the provisions of a statute, under which suit is brought, raises the question of the constitutionality of such statute, it would seem that exception, taken to an instruction based upon the provisions of a statute, would also raise the question whether the statute was constitutional or not. We find in the record, among the reasons in favor of the motion for new trial, two reasons which expressly specify the unconstitutionality of the statute as grounds for challenging the correctness of the court's action in giving two of the instructions, which were specifically excepted to by the appellant. We are inclined, therefore, to the opinion that the validity of the statute is involved upon the record.

*Second*—The first section of the statute is challenged as being unconstitutional, upon the alleged ground that it is class legislation, because, as is insisted, it unjustly discriminates against automobiles, and other horseless conveyances, and, therefore, against manufacturers of the same. In other words, appellant contends that the owners of automobiles or horseless conveyances and drivers of the same are entitled to the same rights and privileges under the law, as the owners or drivers of any other vehicles, and that any law, which deprives them of such rights, or that restricts and limits such rights, is unconstitutional as being in conflict with section 2 of article 2 of the State constitution, which provides as follows: "No person shall be deprived of life, liberty or property without due process of law." We are of the opinion that the act is not unconstitutional for the reason thus stated.

The passage of the act was clearly within the power of the legislature, because it is a police regulation. The legislature is entitled to exercise the police power wherever the public health or comfort or the safety or welfare of society requires it to do so. We have said: "The State inherently possesses, and the General Assembly may lawfully exercise, such power of restraint upon private rights as may be found

to be necessary and appropriate to promote the health, comfort, safety and welfare of society. This power is known as the police power of the State. In the exercise of this power the General Assembly may, by valid enactments,—*i. e.,* 'due process of law,'—prohibit all things hurtful to the comfort, safety and welfare of society, even though the prohibition invade the right of liberty or property of an individual." (*Bailey* v. *People,* 190 Ill. 28; *Booth* v. *People,* 186 id. 43; *Ruhstrat* v. *People,* 185 id. 133).

The act in question was designed to secure the safety of travelers upon the public highway. It is a matter of common knowledge that an automobile is likely to frighten horses. It is propelled by a power within itself, is of unusual shape and form, is capable of a high rate of speed, and produces a puffing noise when in motion. All this makes such a horseless vehicle a source of danger to persons, traveling upon the highway in vehicles drawn by horses.

Such laws as the act here in question have never been regarded as class legislation, simply because they affect one class and not another, inasmuch as they affect all members of the same class alike, and the classification involved in the law is founded upon a reasonable basis. "If these laws be otherwise unobjectionable, all that can be required in these cases is, that they be general in their application to the class or locality, to which they apply; and they are then public in character, and of their propriety and policy the legislature must judge." (Cooley's Const. Lim.—6th ed.—pp. 479-481). In *Barbier* v. *Connolly,* 113 U. S. 32, the Supreme Court of the United States said: "Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment," which amendment referred to by the court is the fourteenth amendment to the constitution of the United States, which provides that "no State shall  *  *  *  deny

to any person within its jurisdiction the equal protection of the laws."

"Laws public in their objects may be confined to a particular class of persons, if they be general in their application to the class to which they apply, provided the distinction is not arbitrary, but rests upon some reason of public policy growing out of the condition of business of such class." (*Allen* v. *Pioneer-Press Co.* 40 Minn. 120). In *Minneapolis and St. Louis Railway Co.* v. *Beckwith,* 129 U. S. 29, it was said: "The concluding clause of the first section of the fourteenth amendment simply requires that such legislation shall treat alike all persons brought under subjection to it. The equal protection of the law is afforded when this is accomplished. * * * The discriminations, which are open to objection, * * * are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges, under the same conditions. It is only then that the discrimination can be said to impair that equal right, which all can claim in the enforcement of the law." The statute in controversy in the case at bar certainly applies to all drivers of automobiles without distinction, and is, therefore, general as to that class, and, for the reason that such horseless vehicles constitute a source of danger to travelers upon the highway, it cannot be said that the classification is not a reasonable one.

In *Gartside* v. *City of East St. Louis,* 43 Ill. 47, this court, in discussing an ordinance requiring certain teamsters, engaged in hauling coal through the city to pay a certain license, said (p. 51): "From the extent and character of his business, these teams must have passed and re-passed almost constantly. This, then, renders the repair of the streets more expensive and more necessary from the fact that his vehicles seem to be large and of considerable weight. For the comfort and convenience of the citizens of the place, as well as persons not residing therein but traveling on its streets, it is necessary that they should be repaired and kept in good con-

dition;" and the ordinance, for the reasons stated, was upheld in that case.

In *Sanitary District* v. *Bernstein,* 175 Ill. 215, this court held that a discrimination between different classes of litigants, which was merely arbitrary in its nature, is a denial of the right of litigants to equal protection of the law, but that, if there is a reasonable ground of distinction, the legislature has discretion to impose reasonable conditions or restrictions, which it deems in furtherance of justice. In *Lasher* v. *People,* 183 Ill. 226, it was said by this court (p. 231): "The legislature have power to form classes for the purpose of police regulation, if they do not arbitrarily discriminate between persons in substantially the same situation. The discrimination must rest upon some reasonable ground of difference." In *Minneapolis and St. Louis Railway Co.* v. *Beckwith, supra,* the Supreme Court of the United States said: "When the calling or profession or business is attended with danger, or requires a certain degree of scientific knowledge upon which others must rely, then legislation properly steps in to impose conditions upon its exercise." It is certainly true that the business of the man, who operates and propels an automobile along the public highway, called a chauffeur, is such a business as is above alluded to. It is attended with danger and requires a degree of scientific knowledge upon which others must rely. These horseless vehicles are certainly capable of being propelled at a greater rate of speed than any ordinary vehicles, known to the traveling public prior to their invention, and if they may travel at any rate of speed, of which they are capable, persons injured would have no remedy, except for such negligence as the common law gives a remedy for.

Statutes, regulating the speed of persons traveling upon public highways, have been upon the statute books of this State for many years and have never been regarded as invalid. A statute of this State provides that no person, driving any carriage upon any public highway, shall run his

horses or carriage, or permit the same to run, etc. (3 Starr & Curt. Ann. Stat.—2d ed.—p. 3604). A statute of this State provides that it shall not be lawful for the driver of any carriage, used for the purpose of conveying passengers for hire, to leave the horses attached thereto while passengers remain therein, without making such horses fast, etc. (Ibid. p. 3605). It is provided by statute in this State that persons, traveling with carriages and meeting on any public highway, shall turn to the right. (Ibid. p. 3604). A statute of this State also provides that persons in charge of any steam engine, propelled over the highways of the State by steam power, shall stop the same whenever they meet persons going in the opposite direction on said highways with horses or other animals, until the latter shall have passed by. (Ibid. p. 3628). While these enactments may not establish the constitutionality of the law under consideration, they at least show that the legislative department of the government has supposed that such legislation is not inhibited by the fundamental law, and the fact that the validity of such laws has not been questioned for a long series of years, is no light consideration in passing upon the validity of a law. (*Cairo and St. Louis Railroad Co.* v. *Warrington,* 92 Ill. 157).

This court has recognized the validity of ordinances, regulating the speed of trains, and of statutes, requiring railroads to fence their tracks, and to bring their trains to a full stop before crossing another railroad. It has been held that "the safety of the traveling community demands that these police regulations shall be enforced." (*Indianapolis and St. Louis Railroad Co.* v. *People,* 91 Ill. 452; *Cairo and St. Louis Railroad Co.* v. *Peoples,* 92 id. 97; *Chicago, Rock Island and Pacific Railroad Co.* v. *Reidy,* 66 id. 43; *Cairo and St. Louis Railroad Co.* v. *Warrington, supra; Chicago and Eastern Illinois Railroad Co.* v. *People,* 120 Ill. 667).

*Third*—Section 2 of the act in question is said to be in conflict with section 13 of article 4 of the constitution, which provides that "no act hereafter passed shall embrace more

than one subject, and that shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." The second section provides that the person driving an automobile shall cause the same to come to a full stop—whenever it shall appear that any horse driven or ridden by any person upon any street, road or highway is about to become frightened by the approach of any such automobile—until such horse or horses have passed. The title of the act is "An act to regulate the speed of automobiles and other horseless conveyances upon the public streets, roads and highways of the State of Illinois." It is said that speed means action, and is directly opposed to stopping, which is inaction, and that, therefore, stopping a machine does not come within the meaning of regulating its speed. The objection is hypercriticism. Section 13 of article 4 of the constitution was intended to put an end to certain vicious legislation, but its design is not to embarrass legislation by making laws unnecessarily restrictive in their scope and operation. (*People ex rel.* v. *Nelson*, 133 Ill. 565). Limitation of the speed of automobiles upon the public streets, roads and highways is for the protection of travelers and drivers of horse-drawn vehicles upon such highways. The requirement, that the automobile driver shall under certain circumstances bring his machine to a full stop, is reasonably connected with the purpose of such protection, as expressed in the title. The cessation of the speed of the automobile altogether, or its reduction to a scarcely perceptible movement, is not incongruous with the title of the act. This provision of the constitution must receive a liberal construction. Unless the provision in an act contains matter incongruous with the title, or having no proper connection with or relation to the title, it will not be void as not embraced therein. (*Hudnall* v. *Ham*, 172 Ill. 76). All matters are properly included in the act, which are germane to the title. If all the provisions relate to the one subject, in-

dicated in the title, and are parts of it, or incident to it, or reasonably connected with it, or in some reasonable sense auxiliary to the object in view, then the provision of the constitution under consideration is obeyed. (*Ritchie* v. *People,* 155 Ill. 98; *Boehm* v. *Hertz,* 182 id. 154). The stopping of an automobile when a horse appears to be frightened, until such horse shall pass, is embraced within the subject of regulating the speed of automobiles, as indicated by the title. It cannot be said that the subject matter of section 2 is not reasonably connected with the subject, mentioned in the title of the act. The stoppage of an automobile until a frightened horse has passed it is, certainly, in a reasonable sense, auxiliary to the object of regulating the speed of an automobile upon the public highway. We are of the opinion, therefore, that section 2 is not unconstitutional for the reason insisted upon.

*Fourth*—Various errors are assigned upon the giving and refusal and modification of instructions by the trial court. In addition to the objection already mentioned to instruction numbered 4 given for appellee, that instruction is said to be erroneous upon the alleged ground that it requires the jury to find, whether it "might, by the exercise of reasonable diligence on his part, have appeared to him [the automobile driver,] that the team of mules, drawing the conveyance in which plaintiff was riding, was about to become frightened." Section 2 of the act says: "Whenever it shall appear that any horse driven or ridden by any person," etc., is about to become frightened, etc. The contention of counsel for appellant is that, under the act, it must appear to the driver of the automobile that the horse is about to be frightened, and that it was erroneous for the instruction to say: if it might so appear "by the exercise of reasonable diligence." The instruction is not erroneous for the reason thus indicated. If it might appear to the driver of the automobile by the exercise of reasonable diligence upon his part, that the horse was about to become frightened, it would be his duty to stop, be-

cause, otherwise, he might shut his eyes, and claim that it did not appear to him that the horse was about to be frightened. The construction contended for would permit the driver of the automobile to willfully evade the statute, and to take advantage of his own willfulness or gross negligence. Such a person might purposely refuse to look toward an approaching team, and, when put upon the witness stand, could truthfully say that it did not appear to him to be frightened because he did not look towards it. He is equally at fault when such circumstance might appear to him, if he would exercise reasonable diligence to observe the condition of the team, which he was passing.

In *Shinkle* v. *McCullough*, 77 S. W. Rep. (Ky.) 196, which was an action for injuries sustained by plaintiff by his horse having been frightened by the defendant's automobile, which was alleged to have been running at an excessive rate of speed, the court of appeals of Kentucky said: "While automobiles are a lawful means of conveyance, and have equal rights upon the public roads with horses and carriages, their use should be accompanied with that degree of prudence in management, and consideration for the rights of others, which is consistent with their safety. If, as the jury found by their verdict, appellant knew, or could have known by the exercise of ordinary care, that the machine in his possession and under his control had so far excited appellee's horse as to render him dangerous and unmanageable, it was his duty to have stopped his automobile, and taken such other steps for appellee's safety as ordinary prudence might suggest."

Objection is made to an instruction, given for appellee, because it told the jury "that in determining the question as to whether the defendant was exercising reasonable care and diligence upon the occasion in question, you have a right to take into consideration the situation and condition of the parties," etc. The objection, made to the instruction, is its use of the words, "the situation and condition of the parties." It is said that this authorized the jury to consider the wealth of

the appellant, and the poverty of the appellee in assessing the damages. There is nothing in this point. There was no evidence of the financial condition of the parties on either side. The words used refer to the situation and condition of the parties at the time when the accident occurred, and in connection with the subjects of the exercise of care on the part of appellee and of negligence on the part of the appellant. In other words, the language used refers to the general surroundings of the parties at the time of the accident. The instruction was based upon the common law duty of drivers of automobiles upon the highways, and it was proper to authorize the jury to consider the probable effect of the movement of the automobile upon the horses driven upon the highway. Another instruction is objected to, because it conditions the action of the jury upon their finding that the appellee "was then exercising reasonable care and diligence for his own safety, as explained in the instructions," etc. It is said that by the use of the words, "as explained in the instructions," the questions of care and diligence and of negligence were taken away from the jury and made questions for the court. Such is not the proper construction of the instruction. All the instructions left it to the jury to determine, whether or not the appellee was in the exercise of due care for his own safety, and whether or not the appellant was guilty of negligence. The court has a right to explain to the jury what constitutes ordinary care as a matter of law. The language in question has reference to such an explanation, and not to a decision by the court upon a question of fact.

Objection is made to an instruction, given for the appellee, which told the jury "that the negligence of William Parker in driving his team, if you believe from the evidence that he was negligent in that regard, would not amount to negligence upon the part of plaintiff, unless plaintiff was himself at fault or by his conduct contributed to such negligence." This instruction was merely intended to lay down the rule that, where the injury is the result of the negligence

of the defendant and that of a third person, the plaintiff may recover if the negligence of the defendant was an efficient cause of the injury. .(*Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242). In other words, where a defendant is guilty of negligence which causes an injury, and the plaintiff is free from negligence contributing thereto, the fact, that the negligence of a third party also contributed, would not relieve the defendant from liability for his negligence. Another instruction is objected to as authorizing the jury to consider the effect of the injury upon the use of appellee's arm and leg, it being claimed by appellant that some of the witnesses testified that there was no injury to the leg, except the enlargement of the glands of the groin. There was, however, testimony of some of the witnesses for appellee, and of appellee himself, that his leg was injured by the accident; and the jury had a right to take into consideration such evidence.

The appellant asked the court to instruct the jury as follows: "The court instructs the jury that an owner of an automobile has the right to use the highway of this State provided in using it he does not violate the law of the State." The court modified this instruction by changing it, so that the last clause read as follows: "provided in using it he uses reasonable care and caution for the safety of others and does not violate the law of the State." The modification was proper. The declaration was framed upon three theories, first, that the machine was going at a speed in excess of the limit of fifteen miles an hour fixed by the statute; second, that it was not brought to a full stop when the team showed fright; and, third, upon the ground of common law negligence. The instruction, as offered, would tend to make the jury believe that, if there was no infraction of the statute, the appellant would not be liable, whereas, under the fifth and sixth counts, the appellant was liable if he was guilty of common law negligence, or if he failed to perform his duty under the common law to avoid injury to the appellee. The modification of the instruction simply called attention to this

common law duty, in addition to the duty imposed by the statute.

Complaint is also made that the court refused instruction numbered 21 asked by the appellant. That instruction was as follows: "The court instructs the jury that where witnesses are otherwise equally credible, and their testimony otherwise entitled to equal weight, greater weight and credit should be given to those whose means of information are superior." Certain doctors were called on the part of the appellant as experts to testify that appellee suffered no injury to his leg from the accident, and this instruction was calculated to induce the jury to give greater consideration to the testimony of such experts than to the testimony of other witnesses, who differed with the experts, and who swore that appellee could not walk for seventeen days, nor after that time without having his hand on a chair, nor subsequently to that time without a cane. But the court gave on behalf of the defendant an instruction numbered 19, which embodied in it all that was material in the refused instruction numbered 21. Instruction numbered 19 was as follows: "The court instructs the jury that in determining the credibility of the witnesses you have a right to take into consideration the means of information of the several witnesses." In regard to this instruction, it is stated in the abstract: "which instruction the court gave of his own motion." This is not true, as the record shows that the instruction was given at the request of the defendant.

It is said that the court erred in refusing instruction numbered 22 asked by the appellant, which told the jury that, if they believed from the evidence that the plaintiff knew, or had reason to believe, that the mules, driven by Parker, were about to become frightened and that there was danger of their running away, and that plaintiff had time to get out of the vehicle and thus be out of danger, and, instead of doing so, plaintiff concluded to risk the danger and stay in the vehicle, and by remaining in the vehicle he became injured by reason of not using the usual and ordinary care for his safety

216—4

that an ordinarily reasonable and prudent man would under similar circumstances, then they should find the appellant not guilty. This instruction was embodied in several other instructions, given for the appellant, which required the jury to find from the evidence that the plaintiff employed all reasonable means to prevent the injury, and used such care and caution for his own safety, or such care and caution, as an ordinarily prudent man would have used under the circumstances. Instruction numbered 11 given for the appellant told the jury that, if they believed from the evidence that the plaintiff might in the exercise of ordinary care and caution have seen or have known the danger and avoided it, and his omission to do so contributed in any degree to his accident, then he was guilty of such negligence as would prevent a recovery. Other instructions were given, requiring the jury to find appellant not guilty if they found that the appellee could, by the exercise of ordinary care and prudence, have avoided the injury. In view of these instructions so given, there was no error in refusing appellant's instruction numbered 22. It is also said that the court erred in refusing instruction numbered 23 asked by the appellant, which told the jury that, if they believed from all the evidence in the case that the plaintiff or others in the carriage did not indicate to defendant that Parker's mules were about to become frightened, and it did not appear to defendant that they were about to become frightened, it did not become the duty of defendant to stop his automobile. This instruction was properly refused. It cannot be said, as a matter of law, that the fact, that if the appellee and those with him in the spring wagon did not give a signal to the appellant that Parker's mules were about to become frightened, the appellee failed to exercise due diligence for his own safety. There was evidence, tending to show that the mules were frightened, and that the women in the wagon screamed, and, if it appeared to the appellant from these circumstances that the mules were about to become frightened, he was obliged to stop his automobile under the

law, whether any signal was given to him by those in the wagon or not. The refusal of instruction, numbered 24 asked by the appellant, was proper because it singles out and unduly emphasizes particular evidence in regard to the speed of the automobile. The testimony of appellee's witnesses was to the effect that the automobile was traveling at the rate of about twenty-five miles an hour, while the testimony produced by the appellant tended to show that the automobile was going only from ten to twelve miles an hour. There was as much testimony on one side of this question as upon the other, and it was a matter for the determination of the jury. We are unable to say that the weight of the evidence is against the finding of the jury upon this question.

*Fifth*—Appellant claims that the court below erred in refusing to instruct the jury to find the appellant not guilty at the close of appellee's testimony and again at the close of all the testimony. The contention of the appellant upon this subject is, that the evidence does not tend to show negligence on his part. We do not agree with the appellant upon this subject. The evidence of appellee tends to show that the automobile was traveling at the rate of from twenty to thirty miles an hour, while that of appellant tends to show that it was going at the rate of only from ten to twelve miles an hour. The road was unobstructed, and it is impossible to believe that appellant did not know and could not see the people approaching him in the wagon from the north. The jury were justified in concluding that, if he did not see the team approaching, he could have done so by the exercise of ordinary prudence and care. The evidence is of such a character, too, that the jury were justified in believing that the appellant saw that the horses were frightened by the approach of his machine. This being so, it was his duty to stop his automobile. But the evidence is that he did not do so, nor did he slacken its speed, but proceeded upon his way without taking any notice whatever of the parties in the wagon, who were injured. The statute does not contemplate that the driver of

an automobile can proceed until a team turns over the wagon and runs away, but is intended to prevent such occurrences. The testimony of the appellee is to the effect that, when the machine was three or four rods from them, the team turned backwards and tried to run, and when the machine was just opposite them, their vehicle upset. Parker testifies that the mules were jumping against one another, and when they were about five or six rods from the machine, they lunged forward and upset the vehicle just as the machine was oppo- site them. Such, substantially, also is the testimony of at least two of the women, who were in the wagon with appel- lee. Such also was the testimony of one Irving Hoogner, who was an entirely disinterested witness. He swears that the team was going south, and that, just as the automobile was even with them, they stuck up their ears and lunged to the west. In view of this evidence the jury were authorized in finding that the team was frightened by the approach of the automobile. One witness, who was at work in the field sixty rods away, swears that he heard the women screaming, and yet appellant testifies that he heard nothing. It was for the jury to say who told the truth in reference to this matter.

*Sixth*—We deem it our duty to call the attention of coun- sel to the abstract in this case. Rule 14 of this court requires the party bringing a cause into this court to "furnish a com- plete abstract or abridgment of the record referring to the pages of the record by numerals on the margin." The ab- stract does not state the substance of the declaration, nor make any other reference to it than merely to say that there is a declaration on page 4 of the record. The declaration is a long document, consisting of six counts, and we have been obliged to go to the record to find out what its allegations are, receiving no aid whatever in this respect from the abstract. This is a clear violation of the rule. In addition to this, the abstract in certain respects misrepresents the evidence. For instance, in the abstract, Emma Peterson is represented as giving the following testimony: "I first saw Mr. Christy op-

posite the big tree half a mile south of the Wilcox place. We were one hundred and twenty rods north from that tree, and forty rods from the Wilcox place. We were going at the rate of four or five miles an hour, the forty rods to the Wilcox place. He passed us just as we turned in. He was going about the same rate of speed I should think." The witness is thus made to state that the appellant was going about the same rate of speed as she and those riding with her were going, to-wit, at the rate of four or five miles an hour. The testimony, as found in the record, is as follows: "Q. Where did he pass you?—A. Just as we drove into the Wilcox place, as we turned in. Q. Did you notice him as he went past?—A. Yes, I noticed him. Q. How was his speed as he passed you compared with his speed as he had followed you up the road? A. About the same, I should think." The testimony of the witness was that appellant was going very fast, and that his speed as he passed her, was about the same as the speed at which he had been going before he passed her. The witness did not say, by any means, that his speed was about the same as hers, to-wit, four or five miles an hour. Again, the witness Amanda Hoogner, who was with Mrs. Peterson at the time, said, as would appear from the abstract: "Saw Mr. Christy on that occasion. * * * He was traveling fast in an automobile. He was, I should judge, one hundred and twenty rods back. We drove into the Wilcox place. I should judge we were driving eight miles an hour. The automobile passed us as we went in. It was going about the same rate of speed." The witness, Amanda Hoogner, is made to say that she and Mrs. Peterson were driving at the rate of eight miles an hour, and that appellant in his automobile was traveling at the same rate of speed. Amanda Hoogner, however, according to the record, did not so testify. The record is as follows: "Tell in miles how fast you were going.—A. I should judge we would be going at least eight miles an hour, if not more. Q. Where did the automobile pass you?—A. It passed us as we went in. We just

got in when it went by us.  Q.  When it passed you how was its speed compared with the speed it had back of you?—A. About the same."  Her testimony was that the speed of the automobile  was the same when it passed them as it had been before it reached them, and not that the speed of the automobile and the vehicle, which the witness was driving or riding in, was the same.  Such misinterpretation of the testimony of the witnesses, as presented by an abstract, does not commend itself to the favorable consideration of this court.

We find no error in the record which would justify us in reversing this judgment.

Accordingly, the judgment of the circuit court of Mercer county is affirmed.                    *Judgment affirmed.*