## AUTHORITY OF A MUNICIPALITY TO DESIGNATE ONE WAY STREETS.

Municipal Court of Cincinnati.

THE CITY OF CINCINNATI v. EDWARD J. BAUMGARTNER.

Decided May, 1924.

*Constitutional Law—Regulation and Control of the Use of Streets— Modern Conditions Render the Exercise of Such Authority Imperative—Individual Interest and Convenience Must Yield for the Public Good.*

A municipality has the power to enact and enforce reasonable regulations touching the use of its streets and public ways, and when it is deemed in the interest of the people as a whole to limit traffic on a particular street to one direction, such limitation is not rendered invalid by reason of the fact that some will suffer inconvenience or loss in a business way by reason of the enforcement of an ordinance establishing such limitation.

*Saul Zielonka,* City Solicitor, and *Oliver M. Dock, Chauncey Pichel* and *Joseph O'Connell,* Assistant City Solicitors, for the city.

*Gusweiler, Fox, Foster, Lambert & Davies,* Attorneys for the Defendant.

EYRICH, J.

Edward J. Baumgartner was arrested and tried under a warrant issued by the clerk of the Municipal Court of the city of Cincinnati, charging him with a violation of the provisions of an ordinance enacted by the council of said city, which limited the operation of 'all vehicles using Main street between Third and Ninth streets, to north bound traffic only.

Baumgartner's violation of the ordinance, for which he was arrested and tried under the warrant, is admitted. It is conceded by defendant that his only defense rests upon the ground that that part of the ordinance regulating traffic on Main street between Third and Ninth streets as above set forth is unconstitutional.

It not only appears from the record but the court takes

judicial notice of the fact that Main street, the use of which, between Third and Ninth streets, by vehicles, is restricted by the ordinance to travel in one direction, viz: northwardly, is a public street in the city of Cincinnati, the buildings on which are mainly occupied for business purposes.  Many of the places of business on said street have been established for many years, and there is no question but that this street is one of the great business thoroughfares of the city.

Defendant is engaged in business on Main street.

The testimony of the defense varied to a considerable degree.  Some of the witnesses testified that since Main street has been made a one-way north bound street, that the street has developed into a race track; others that travel was so heavy that the number of macines upon the street made it almost impassable; others that they had petitioned council to permit parking on both sides of Main street when parking was permitted only on one side of the street, after which council amended the ordinance to that effect, and since the amendment parking is so heavy that automobiles with prospective customers now pass up Main street, and go elsewhere to park their automobiles and as a consequence do business elsewhere.

The testimony of witnesses for the city of Cincinnati showed that the city is contemplating the widening of Main street by taking two feet off the sidewalk on each side and that these merchants were before council protesting against such action, and that the present ordinance is not final, but will be amended from time to time as the exigencies of the situation require.

Defendant contends and complains that Main street is the only north bound street thus far established, excepting a few small streets which are of little or no consequence; that Walnut street and Sycamore street which parallel Main street on the west and east respectively, are both south bound streets; that by reason of the foregoing and the limitation of traffic on said streets as just indicated the business and property rights of the defendant and other merchants on Main street have been injured and impaired by the conjestion of traffic during certain parts of the day, and by the speed of automobiles at other

times of the day; that loss of trade, customers and prospective customers has followed as a result thereof and caused those seeking to trade with said merchants on Main street to go elsewhere; that these traffic restrictions and conditions have caused pedestrians to avoid Main street, because of the danger of crossing said street; have made it more difficult for the merchants to receive and ship their wares, and have compelled the customers of these business houses to cross the street at the regular crossing places established for that purpose, and have placed the burden of north bound travel upon Main street.

Counsel for the defendant concede that Section 3 of Article 18 of the Constitution of Ohio, and Section 3714 of the General Code of our state, give council the power to enact and enforce traffic regulations and to establish one-way streets. They contend however, that the ordinance should be set aside and declared unconstitutional for the reason that it works a hardship upon the merchants doing business on Main street, that they have been discriminated against by council, and that the common welfare clause and Article 1, Section 9 of the Constitution of Ohio, as well as Article 5 and Article 14 of the Amendments to the Constitution of the United States have been violated thereby.

The introduction in recent years of automobiles and other motor vehicles as a means of conveyance and transportation and the many deaths and injuries to person and property resulting therefrom, have naturally and repeatedly called for judicial interpretation as to the scope and limit of the powers conferred upon the councils of municipalities to regulate traffic. The language of some of these decisions presents an apparent conflict in expression and effect, although the principles they announce are in the main derived from the common law as supplemented and expanded by statutory enactment.

What is known as the "law of the road" was brought over from England by the Colonists and became part of our jurisprudence. Going back to the earliest reported case on that subject in this country at a time when all traffic was horse or oxen drawn, that of *Commonwealth* v. *Scodder*, decided in

1848 and reported in the 56 Mass. at p. 577, by Judge Dewey held: "An Ordinance providing for the safety and convenience of the people generally in the use of certain streets or portion of streets, to facilitate the movement of traffic was a valid exercise of the police power of a municipality;" and continuing down to the latest and numberless reported decisions on the subject, one fact upon which all agree is that municipality is a trustee for the entire people, and as such has the power to enact and enforce reasonable regulations touching the use of the streets and public ways, and that the good of the people as a whole is of paramount consideration.

Judge Wanamaker in the recent case of *Village of Perrysburg* v. *Ridgeway,* reported in the 108 O. S., at page 245, ennunciates this principle as follows:

"It would be a bold assertion to say that all powers of local self-government, as used in the Ohio Constitution of 1912, did not include the power of complete regulation and control of streets. The streets and alleys of a municipality are what the arteries and veins are to a man. Control must be placed somewhere, and, if there is any virtue whatsoever in democracy, why should not that control be placed in the community, which opens the streets, pays for their establishment, their maintenance, and best understands their needs for durability and safety?"

It is true that a court will not substitute its judgment for legislative discretion, except and unless "it is in clear conflict with some express provision of the state or federal Constitution."

To determine the constitutionality of a statute or an ordinance however, it is necessary and proper to inquire into the reasonableness or unreasonableness of the legislative act in question; if unreasonable to the extent of violating the guarantees of either the Constitution of the state or nation, then the act should be judged a nullity.

What is a reasonable restriction and what constitutes an unreasonable restriction must be considered by the court in the light of all the circumstances of the particular case at hand,

measuring fact with fancy, and restriction with condition, to determine in the end whether that ordinance or statute claimed to be unreasonable is in fact unreasonable, and if so, whether it is so arbitrary and oppressive as to invade the constitutional rights of him, who complains.

"Broad and varied powers are granted to municipalities under the General Welfare Clause of the Constitution", Mc-Quillan on Municipal Corporations, Supp. Sec. 895.

"Municipal corporations are *prima facie* the sole judges respecting the necessity and reasonableness of their police ordinances. Every intendment is to be made in favor of the lawfulness and reasonableness of the exercise of the police power in promulgating regulations to promote the public health, morals, safety and general welfare—and only in clearest cases will courts interfere.

"The city is presumed to have full knowledge of local conditions and its determination of the reasonableness of any specific regulation in the light of this knowledge is *prmia facie* valid.

"Appropriate means to the exercise of the police power rest largely within the discretion of municipal authorities, and courts will not interfere unless the means employed amount to an unreasonable and oppressive interference with individual and property rights and constitute an abuse rather than a legitimate use of power." McQuillan on Municipal Corporations, Supp. Sec., 896.

In the case of *Commonwealth* v. *Patch*, in the 97 Mass., at page 211 the court held as follows:

"But where the question of the unreasonableness of an ordinance depends upon evidence, and it relates to a subject within the jurisdiction of the corporation, the court will presume it to be reasonable, until the contrary is shown."

In the case of *Chenowitch* v. *State Board of Medical Examiners*, 155 L. R. A., at page 964, cited by the defendant, the court says:

We must not be understood, as in any sense declaring for the restriction of the exercise of the police power, as heretofore announced by this court, in cases where the purposes are plainly for the public good, for it is the tendency of courts to make

such new and other application of this doctrine, as the ever-changing conditions and protection of society may seem to require.''

In the case of *Froelich* v. *Cleveland*, 99 Ohio State, page 376, Syl. 2, the court says:

''When a city has adopted a charter under which it is authorized to exercise 'all powers of local salf-government,' pursuant to the provisions of Section 3 and 7, of Article XVIII of the Constitution, the authority to locate, establish and protect the streets within its limits resides in the municipality, and it may adopt and enforce such reasonable regulations for proper and economic use as it deems proper. It may regulate the weight of loads and the widths of tires of vehicles passing over the streets. It derives this authority not by a grant from the Legislature, but under express authority from the people of the state given in the Constitution.''

But why proceed further in the citation of the many decisions upon this subject. The case of *Perrysburg* v. *Ridgway*, *supra*, decided by the Supreme Court of our state, is conclcsive upon the subject, when it says:

''Local legislative authorities, and not the courts, are primarily the judges of the necessities of local situations calling for police regulation and the courts can only interfere when such regulution arbitrarily exceeds a reasonable exercise of authority.''

With this general principle in mind, we proceed to examine the facts and circumstances that exist, and fortifying ourselves with the fact that judicial notice is permitted to be taken of the changing conditions and of matters of common knowledge, we shall attempt to determine whether the state of facts in the instant case as applied to the traffic conditions which the council by this ordinance seek to improve, is an unwarranted, arbitrary, oppressive, discriminative and unreasonable invasion of the rights of this defendant.

The congested area of the city of Cincinnati at the time of the trial of this case, extends from Third street on the south to Ninth street on the north and from Broadway on the east to

Elm street on the west, the streets of which run north and south and east and west, and are much too narrow and wholly inadequate for present needs. At the time of making the original plan of the city of Cincinnati, traffic in its present form and volume was not considered for very obvious reasons. It is only natural to conclude therefore, that the city of Cincinnati finds itself in the same position other cities of like size find themselves, that is unable to cope with the existing condition, unless it be by adoption of regulatory measures.

The advent of the automobile, the stupendous growth of industry, particularly in the last ten years, and the ever-increasing use of the motor vehicle for travel and transportation, has resulted in a condition wholly unlooked for, which demands a remedy drastic in character as compared with that formerly employed.

As a .consequence municipalities ''have prescribed rules requiring the numbering of machines, licensing the driver, regulating the speed of vehicles, restricting the time of parking, setting aside particular streets for certain uses, signalling by horns and lights, regulating the weight and character of the load and many similar limitations, each restriction having in view the welfare of the public, so that all may safely and sanely use the highways.''

The council of the city of Cincinnati, confronted with this situation, made an investigation of the problem in other metropolitan cities, and after a period of some years, during which public meetings were held and all citizens given an opportunity to be heard, adopted a traffic ordinance regulating vehicular traffic upon its streets.

Mention must be made of the fact that street cars operate along most of the streets in the congested area and council was compelled to arrange the use of the streets in such a manner, as to give the majority of the people who ride in street cars, routes which would bring them to the heart of the business district by the least circuitous route.

It is quite true that Main street now carries more north bound traffic than it formerly carried, and yet it is equally

true that Sycamore street, for a number of months prior to making Main street a. north bound street, carried more of the south bound traffic and today continues to do so, although Walnut street also shares that burden.

It is no doubt also true that by reason of the fact that automobiles are not now permitted to proceed southwardly upon Main street that those from the hilltops now take either Walnut street or Sycamore street and thus avoid Main street, although for the same reason automobiles proceeding northwardly avoid either Walnut street or Sycamore street.

It is natural to conclude, therefore, that some people do not frequent Main street for one or the other of the reasons cited by the defendant, and yet the same situation applies to any other street in said city, for traffic is just as heavy in other parts of the municipality. Parking of an automobile in the congested district is becoming more difficult daily, and the crossing of streets is becoming more dangerous as the use of automobile increases.

The court has found it difficult to reconcile the various contentions of the defendant for the nullification if that part of the ordinance pertaining to the making of Main street a one-way north bound street, and particularly the claim that it has worked a large decrease in the business of the defendant and these other merchants on Main street, in view of the fact all lines of business have suffered an appreciable decrease.

The Court of Appeals of Kentucky, in the case of *Commonwealth* v. *Nolan,* 189 Ky., 34, 11 A. L. R., 202, in passing upon a situation similar to the one at bar, in which the defense of discrimination was interposed, held:

"A municipal corporation having by statute exclusive control over its streets may confine traffic by motor vehicles on narrow streets to one direction." (Syl. 1.)

"A municipal ordinance designed to protect the safety or health of the public will not, while necessary to its protection, be declared invalid merely because its enforcement will subject a single individual, a considerable number, or an entire community of persons, to inconvenience." (Syl. 2.)

"An ordinance confining the use of the narrow streets by

motor vehicles to travel in one direction does not violate the c nstitutional provision against special and discriminatory legislation.'' (Syl. 4.)

In its opinion the court says, page 204:

''At any rate a municipal ordinance designed to protect the safety or health of the public, and necessary to its protection, will not by the courts be declared invalid merely because its enforcement will subject to inconvenience a single person, a considerable number, or an entire community of persons. In such case the good of the public will be regarded as of paramount consideration.''

And at page 206:

''In addition, it may be said that the Legislature of this state has duly conferred upon the municipal authorities of its cities and towns such powers as are necessary to regulate the use of their streets by motor vehicles; such authority as appertains to Harlan, a city of the fourth class, being conferred by Kentucky Statutes, Supp. 1918, Chapter 3562, among other things, declares that its city council shall have 'exclusive control and power over the streets, roadways, sidewalks, alleys', etc., of the city.   And this power the council has exercised and had the right to exercise by the passage of the ordinance in question.   Certainly the power thus given by the statute, *supra*, in the absence of express or implied restrictions imposed by some other statute, which is not claimed, can leave no doubt of the right of the city council to pass the ordinance, and such an ordinance is a valid exercise of the police power for the protection and safety of its citizens.   *Christy* v. *Elliott*, 216 Ill., 31; 1 L. R. A. (N.S.), 215; 108 Am. St. Rep., 196; 74 N. E. 1035, 3 Ann. Cas. 487; *People* v. *Schneider*, 139 Mich., 673; 69 L. R. A., 345; 103 N. W., 72; 5 Ann. Cass., 790.''

An autombile may or may not be a dangerous agency, dependent upon the will or whim or skill of the person who drives it.   The continued increase in the use of the automobile by persons in all walks of life, has caused congestion upon the very streets of metropolitan cities which should be free and clear and has made our streets the most dangerous places in America.   The number of accidents leading to serious injury and death, due to motor vehicular traffic, is appalling.   The

number of traffic law violators who daily crowd the docket of the traffic courts in all large cities, is amazing and shows the utter lack of respect with which the citizens hold these laws.

There was a time when a traffic officer was unknown in this city, but one can well conceive the turmoil, confusion and accidents which would occur if he were now eliminated.

Because of the gravity of the situation steps are and will continue to be taken to regulate the use of the automobile, not only to reduce speed and recklessness, but to so arrange the movement of traffic, that the greatest number of people may benefit thereby.

One of the means taken is the establishment of one-way streets, for the purpose of facilitating and relieving the movement of the many vehicles now upon the streets.

It is possible, that by the adoption of such an arrangement an apparent hardship may be suffered by a number of people upon a certain street. That fact alone, however, can not in and of itself, be deemed an unreasonable invasion of the rights of the defendant and those similarly situated when, as in this case, individual advantages must yield and be subordinated to the general welfare of the community.

The court is of the opinion that the ordinance in question making Main street a one-way street north bound, is not unreasonable, discriminatory or arbitrary, nor an invasion of the constitutional rights of the defendant. Therefore we find the defendant guilty of the offense charged and fine him the costs.