(No. 19819.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* W. LINDE, Plaintiff in Error.

*Opinion filed October 25, 1930—Rehearing denied Dec. 3, 1930.*

BURRY, JOHNSTONE, PETERS & DIXON, (ARTHUR DIXON, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, C. W. REED, State's Attorney, and JOEL C. FITCH, for the People.

Mr. COMMISSIONER EDMUNDS reported this opinion:

Plaintiff in error, W. Linde, was tried before a justice of the peace for violation of section 3 of the Motor Vehicle act of 1919 as amended and was found guilty and fined. He appealed to the circuit court of DuPage county, where he waived a jury. There was a trial by the court, resulting in a finding of guilty and the imposition of a fine. The case is here on writ of error, plaintiff in error contending that section 3 is in conflict with the fifth and fourteenth amendments of the constitution of the United States and with sections 2 and 14 of article 2 of the constitution of Illinois.

At the time of his arrest plaintiff in error was driving a truck towing a trailer upon Route 5, one of the improved highways of the State of Illinois. Upon the trailer was a steam shovel or crane. The weight on the front axle of the trailer was 28,000 pounds. Green, Mullenbruck & Nagel, Inc., owner of the crane and employer of plaintiff in error, was a corporation engaged in construction work and the crane was being transported to the place where the corporation was then engaged in building a State road bridge. The evidence disclosed that cranes such as the one in ques-

tion are used by construction contractors engaged in heavy construction work; that there are about one thousand of them in use in Illinois, seventy-five per cent of which have to be transported from job to job; that they cost about $10,000 each and with proper care will last about five years. The evidence further disclosed that the corporation had owned the crane in question for six or seven months; that the average period that it was used on a job was three or four months, and that it could not have been transported to the place to which it was enroute without using a State highway. Thomas F. Green, president of the corporation, testified that the corporation could not be a successful bidder on construction jobs of the type to which the crane was being moved unless such a crane could be used; that if it were barred from the highways its only value would be as junk; that all the contractors that he knew doing the same type of work used such cranes; that it would be "impracticable" to take the crane apart and re-assemble it, and that to do so would require the assistance of another crane. Paul B. Cochrane, district manager for the company which manufactured the crane, testified that it is physically possible to take such cranes apart and transport them in separate units but it would be "impracticable;" that it would require a crane drag to dismantle them, and that such work would require a man well versed in the makeup of the machine. Joseph H. Airey, treasurer of another construction company doing the same kind of work as the corporation owning the crane in question, testified that it would be almost impossible to be a successful bidder on any job of that type without the use of such a crane.

The gross weight through one axle of the vehicle driven by plaintiff in error being in excess of that permitted by section 3 of the Motor Vehicle act (Cahill's Stat. 1929, chap. 95a, par. 3,) the judgment must be affirmed unless section 3 is invalid. Plaintiff in error contends that such provision deprives the owners of vehicles subject to it of

their liberty and property without due process of law and denies them the equal protection of the law. In furtherance of this contention it is argued that "liberty" includes the right to engage in the ordinary occupations of life, such as that in which the crane was being employed; that methods of transportation and tools in trade have developed at a rapid rate during recent years and under modern conditions the use of such a crane is the ordinary thing; that to carry on the occupation in which the crane is used the public highways must be used to move it from place to place; that section 3 is consequently an improper and unreasonable interference with liberty, and that the provision is invalid because it discriminates between businesses such as are conducted by stone and sand companies and in which heavy loads can readily be split up to bring their individual weights below the prescribed limit, and businesses such as that of the company owning the crane, where splitting up of heavy loads is impracticable. The position of the People is that the State has paramount authority and control over its highways; that no one has an absolute and unqualified right to use them; that in the exercise of its police powers the General Assembly has the power to limit or prohibit the use of the State highways by any kind of vehicle if such limitation or prohibition is reasonably necessary to save the highways from injury or provide for the public safety and general welfare, and that even though such regulation may result in a restriction of liberty of contract or use of private property, there is no invasion of any guaranty of the constitution of the United States or of the constitution of Illinois.

Although the police power has constitutional limits and any measure enacted or adopted in its exercise must, to be sustained, bear some reasonable relation to the purposes for which the power may be exercised, and although the legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private rights, the

authority of the States to enact such laws as they deem reasonably necessary to promote the public health, morals, safety and general welfare comprehends a wide range of judgment and discretion in determining the matters which are of sufficiently general importance to be subjected to State regulation and administration. (*Lawton* v. *Steele,* 152 U. S. 133; *City of Aurora* v. *Burns,* 319 Ill. 84.) All uses of property or courses of conduct which are injurious to the public health, morals or safety may be prohibited by the State although the exercise of the power may result in inconvenience or loss to individuals. In this respect individual rights must yield to the higher rights of the public. The power that the State may exercise in this regard is the overruling law of necessity and is founded upon the maxim *salus populi est suprema lex.* The existence and exercise of this power are an essential attribute of sovereignty, and the establishment of government presupposes that the individual citizen surrenders all rights the exercise of which would prove hurtful to the citizens generally. (*People* v. *Rosehill Cemetery Co.* 334 Ill. 555.) Where the public interest is involved, preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property. (*Miller* v. *Schoene,* 276 U. S. 272.) It is the proper function of the legislative department of government in the exercise of the police power to consider the problems and risks that arise from the use of new inventions and endeavor to adjust private rights and harmonize conflicting interests by comprehensive statutes for the public welfare. (*Smith* v. *New England Aircraft Co.* 170 N. E. (Mass.) 385.) Under its police power the General Assembly has the same authority to pass an act for the general protection of the property of the public as to pass an act for the general protection of the property of an individual. (*People* v. *Sisk,* 297 Ill. 314.) As to the public

streets, the right to use them for purposes of travel is not an absolute and unqualified one. It may be limited and controlled by the State in the exercise of the police power whenever necessary to provide for and promote the safety, peace, health, morals and general welfare of the people, and is subject to such reasonable and impartial regulations adopted pursuant to this power as are calculated to secure to the general public the largest practical benefit from user of such highways and to provide for the safety of the public while using them. *Elie* v. *Adams Express Co.* 300 Ill. 340; *Chicago Coach Co.* v. *City of Chicago,* 337 id. 200; *Haggenjos* v. *City of Chicago,* 336 id. 573.

This court will take judicial notice that the use of the public roads and bridges by vehicles of excessive weight is calculated to result not only in injury to public property but also in danger to all who travel such thoroughfares. (*Murphy* v. *California,* 225 U. S. 623; *Jacobson* v. *Massachusetts,* 197 id. 11; *Mugler* v. *Kansas,* 123 id. 623; *Pierce Oil Corp.* v. *City of Hope,* 248 id. 498; *Polglaise* v. *Commonwealth,* 114 Va. 850, 76 S. E. 897.) We must presume that the legislature recognized this fact and enacted the statutory provision here attacked for the purpose of promoting the safety of State property and the safety of the traveling public. (*Powell* v. *Pennsylvania,* 127 U. S. 678; *Durand* v. *Dyson,* 271 Ill. 382.) The end thus sought is appropriate and legitimate. We may not assume that weights less than those proscribed by section 3 are of the class bringing the danger which it is sought to avoid or that weights in excess of those proscribed do not bring such danger. (*Carley & Hamilton* v. *Snook,* 74 U. S. (L. ed.) 250.) There is nothing in this record or of which we may take judicial notice to indicate that the proscriptions of this provision are not properly related to the purpose thus sought. The section is therefore valid. *Lochner* v. *New York,* 198 U. S. 45; *Holden* v. *Hardy,* 169 id. 366; *Noble State Bank* v. *Haskell,* 219 id. 104; *Coppage* v. *Kan-*

*sas,* 236 id. 1; *Nashville, Chattanooga and St. Louis Railway Co.* v. *White,* 278 id. 456; *City of Chicago* v. *Foley,* 335 Ill. 584.

So far as the contention of discrimination is concerned, it is sufficient to say that the legislature may exercise the power of classification, and some latitude must be allowed to the legislative judgment in selecting the basis of classification. That power must be exercised in a manner palpably arbitrary to authorize a judicial review of it, and it cannot be disturbed by the courts unless they can clearly see that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched. (*International Harvester Co.* v. *Missouri,* 234 U. S. 199; *Carley & Hamilton* v. *Snook, supra; Silver* v. *Silver,* 74 U. S. (L. ed.) 67; *Standard Oil Co.* v. *Marysville,* 279 U. S. 582; *Barbier* v. *Connolly,* 113 id. 27; *Christy* v. *Elliott,* 216 Ill. 31; *Bagdonas* v. *Liberty Land and Investment Co.* 309 id. 103; *Weksler* v. *Collins,* 317 id. 132; *People* v. *City of Chicago,* 337 id. 100; *Brest* v. *Commissioners of Insurance,* 169 N. E. (Mass.) 657.) It is incumbent upon the one invoking the protection of the fourteenth amendment to show with convincing clarity that the law of the State created the discrimination of which he complains. (*Corporation Com.* v. *Lowe,* 74 U. S. (L. ed.) 517.) This statute, which makes the weight of the load the determining factor and which applies to those who propose to transport over the public highways loads over a certain weight, rests upon an actual, substantial difference between that class of individuals and others, and it involves no such arbitrary or unreasonable discrimination as to justify this court in declaring it unconstitutional.

The judgment of the circuit court is affirmed.

Per Curiam: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*