STATE OF IOWA, appellee, v. CLAUDE A. BALSLEY, appellant.

No. 47819.

(Reported in 48 N.W.2d 287)

June 5, 1951.

Hatt & Huff, of Sioux City, for appellant.

Robert L. Larson, Attorney General, Folsom Everest, Special Assistant Attorney General, Bernard A. Brown, County Attorney, and A. H. Bolton, of Sioux City, for appellee.

WENNERSTRUM, C. J.—The defendant was charged in the Municipal Court of Sioux City, Iowa, with operating an overloaded vehicle on the highways of the state and consequently violating section 321.463, 1950 Code. Upon trial to the court (sections 762.12 and 602.28, 1950 Code) he was found guilty and fined. He has appealed.

The applicable portions of section 321.463, 1950 Code, are as follows:

"Axle—maximum gross weight. * * *

"The gross weight on any one axle of a vehicle, or of a combination of vehicles, operated on the highways of this state, shall not exceed eighteen thousand pounds on an axle equipped with pneumatic tires, and shall not exceed fourteen thousand pounds on an axle equipped with solid rubber tires.

"No vehicle or combination of vehicles shall be operated with a total gross weight in pounds in excess of the amount given in the following table corresponding to the distance in feet between the extreme axles of the said vehicle or combination of vehicles measured longitudinally to the nearest foot.

"No group of axles of any vehicle,. or any combination of vehicles, shall carry a load in pounds in excess of the value given in the following table corresponding to the distance in feet between the extreme axles of the group measured longitudinally to the nearest foot:

| "Distance in feet between the extremes of any group of axles or the extreme axles of the · vehicle or combination. | Maximum load in pounds carried on any group of axles or of the vehicle or combination. |
|---|---|
| 4 | 32,000 |
| * | * * * |
| 21 | 44,800 |
| * | * * * |
| 35 | 56,800 |
| * | * * * |

"A tolerance above the maximum legal weight of any axle or vehicle or combination of vehicles may be allowed as follows:

"Three percent on any axle, including tandem axles.

"Eight percent of the gross weight on any particular group of axles.

"Eight percent on the total gross weight of a vehicle or combination of vehicles."

This section of the statute is the result of suggested legislation made by the American Association of State Highway Officials.[1]

The necessity for legislation limiting the axle load on trucks is very definitely shown in the report of the Maryland Truck Weight Commission to the 1951 General Assembly of that state. The findings of the commission were the result of a study made

---

[1]Resolution adopted by American Association of State Highway Officials, April 1, 1946, and recommended for uniform incorporation in the laws of all states and set out in report of meeting of association of that date. Pages 6-7.

of the effect of the driving of trucks of varying axle loads on a particular strip of pavement in that state.[2]

This case was tried on an agreed stipulation of the facts. It is therein shown that the appellant was driving what is termed a combination vehicle on the highways of Iowa. It consisted of a semitrailer and tractor combination. The trailer truck was loaded with 587 cases of eggs.

In order that the statement of facts and our comments concerning them may be more readily understood, we are setting out a sketch of this combination vehicle.

It is shown by the above sketch the measurements between the several axles, as well as the legal weight permitted under the

---

[2]It is set out in the report (February 1951, pages 10-11, 16-17) that the paving in that state, as well as other states, had been constructed with a 9-inch thickness of concrete pavement in anticipation of an 18,000-pound axle loading. It was therein stated that if axle loads in excess of 18,000 pounds had been expected with substantial frequency, an engineering theory would have dictated a thickening of the standard 9-inch edge and that if frequent 22,400-pound axle loads occurred, engineering practice and theory would require the provision of 10-inch edge thickness. The reports of the tests made by the Maryland Truck Weight Commission show (a) that 44,800-pound tandem axle loads caused approximately 11 times as much cracking (lineal feet) as 32,000-pound tandem axle loads; (b) 22,400-pound single axle loads cause approximately 6 times as much cracking (lineal feet) as the 18,000-pound single axle loads; (c) after 84,000 truck passes had been made over a certain studied section of pavement, 80% of the joints of the section which had carried 44,800-pound tandem axle loads were depressed, whereas with the same number of truck passes, only 10% of the joints in the section which had carried 32,000-pound tandem axle loads were depressed; (d) after 137,000 truck passes had been made over a particular studied section of pavement, 22% of the joints in the section carrying 22,400-pound single axle loads were depressed, while only 2% of the joints in the section carrying 18,000-pound single axle loads were depressed. This particular experimental project was also fostered by the Interregional Council on Highway Transportation, which organization is composed of the highway directors of 11 midwest and eastern states. Trucks loaded with concrete blocks were driven periodically over the tested pavement. The loads varied from single rear axle trucks carrying 18,000 pounds, which is the legal limit for such type of truck in 34 states, to loads of 22,400 pounds of weight on the rear single axle. Other experiments were made with trucks with tandem axles on the rear carrying loads of 32,000 pounds which is the maximum limit recommended by the American Association of State Highway Officials to loads of 44,800 pounds on trucks with tandem rear axles. This last referred to load in pounds is permitted in 6 states.[A]

[A]Time Magazine, January 22, 1951, page 86. Highway Safety—Motor Truck Regulation—The Council of State Governments (1950), pages 64-65.

statute on each axle and between the several axles. The front part of the combination vehicle is the tractor—the power unit. The front of the trailer-truck portion of the combination vehicle rests on the rear of the tractor portion. The trailer truck is equipped with two axles at its rear end. These two rear axles are separated by a distance of four feet. In measuring between the several axles the distance is computed from center to center of the axles involved. It was stipulated that the distances between the axles are as hereinafter set forth : between axles 1 and 2—14 feet; between axles 2 and 3—17 feet; between axles 3 and 4—4 feet; between axles 1 and 4—35 feet; and between axles 2 and 4—21 feet.

It was also stipulated that at the time alleged in the information the gross weight of the load on the several axles was as follows : axle 1, 7450 pounds; axles 1 and 2, 24,500 [24,600] pounds; axle 2, 17,150 pounds; axles 3 and 4, 32,950 pounds; axles 2, 3 and 4, 50,100 pounds, and the gross weight on axles 1, 2, 3 and 4 was 57,550 pounds, which weight constituted the gross weight of the combination of vehicles and the load.

■■ The issue presented on this appeal is whether the measurement of the distance between the front axle of the tractor and the rear axle of the trailer truck should be the basis upon which the computation of the allowable load should be made or whether the measurement should be made of the distance between the extreme axles of a group of axles and the allowable load computed thereon.

It is the claim of the appellant that inasmuch as there was a distance of 35 feet between axles 1 and 4, the table incorporated in the statute allowed him a maximum load of 56,800 pounds plus a tolerance of eight per cent of the gross weight of the vehicle or combination of vehicles which would amount to 61,344 pounds. It is stipulated that when weighed the total weight of the tractor and the loaded trailer truck was 57,550 pounds. It is therefore the contention of the appellant that in considering the measurements and the tolerance allowed, there was no overloading of the vehicle.

However, if appellant's contention is to be accepted, there would be no consideration given to that portion of the statute which refers to a "group of axles." It is shown by the stipulation

that the actual weight of the load carried between axles 2 and 4 was 50,100 pounds. Inasmuch as the distance between these two axles is 21 feet, it is the claim of the State that the appellant was exceeding the weight load allowed of 44,800 pounds and thus was in violation of the statute. An allowance of an eight per cent tolerance on the basis of the 44,800 pounds would permit additional weight of 3584 pounds or a total of 48,384 pounds which might be carried between axles 2 and 4. It will be observed, however, that even with the tolerance allowance, there would be an overweight of 1716 pounds. It is the contention of the appellant that axles 2 and 4 are not the extreme axles of the group. Consequently, it is necessary for us to determine what is the meaning of the term "group of axles."

I.   In the light of our previous comments and inquiries, we must determine the meaning of the following portion of the heretofore quoted statute:

"No group of axles of any vehicle, or any combination of vehicles, shall carry a load in pounds in excess of the value given in the * * * table."

In considering this question it is well to keep in mind the apparent purpose of the statute, which is to prevent the overloading of trucks and the resulting deterioration of the paving, as well as the avoiding of danger to all persons traveling on the highways. In fact, the court will take judicial notice of this fact. People v. Linde, 341 Ill. 269, 173 N.E. 361, 72 A.L.R. 997, 1003, and cited cases.

The trailer truck is a separate portion of the combined unit. It is, however, a vehicle. Section 321.1(1), 1950 Code, defines "vehicle" as follows:

" 'Vehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks."

Our statute states that: " 'Trailer' means every vehicle without motive power designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that

no part of its weight rests upon the towing vehicle." Section 321.1(9), 1950 Code.

The trailer truck here involved is, in fact, a semitrailer and under our statutory definitions is a vehicle:

" 'Semitrailer' means every vehicle without motive power designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that some part of its weight and that of its load rests upon or is carried by another vehicle. "* * *.

"A 'semitrailer' shall be considered in this chapter separately from its power unit." Section 321.1(10), 1950 Code.

Without the second axle or wheel portion of the tractor the truck trailer could not be propelled along the highway. This second axle or wheel portion of the tractor consequently becomes an integral and necessary part of the vehicle which carries the load proper. The weight of the trailer truck would necessarily rest between axles 2, 3 and 4. These axles constitute, in our opinion, a group of axles. It should be kept in mind that the statute prohibits an excess loading of a vehicle dependent upon the extreme axles of a group serving the vehicle and also between the extreme axles of a combination of vehicles such as in the case of a tractor and the accompanying trailer truck. A group of axles of a vehicle must necessarily mean some combination of axles in the vehicle other than both "extreme axles" of a combination vehicle or the "tandem axles." Webster's New International Dictionary (Second Edition—1944) defines the word "group", in part, as follows:

"An assemblage of persons or things regarded as a unit because of their comparative segregation from others; an assemblage of objects in a certain order or relation, or having some resemblance or common characteristic."

A group of axles in the present case must mean something other than all, and we hold it means those things—axles—which are contiguous and segregated by reason of their use.

In the instant case the extreme axles of a group would be the second axle or wheel and the rear axle or wheel of the tandem axles or wheels. These are the extreme axles of the group sepa-

852

rated from the entire unit. When reference is also made in the alternative to "any combination of vehicles" it does not necessarily mean that consideration shall not be given to a single vehicle and its axles and the weight they carry. Then, too, we must keep in mind that the statute states that, " 'Semitrailer' shall be considered in this chapter separately from its power unit." Consequently it is our holding that axles 2, 3 and 4 constitute a group of axles and that consideration can and must be given to the distance between the extreme axles of this particular group and the weight that was on them.

■ II. It is the claim of the appellant that a motor freight carrier would be entitled to the maximum weight load set out in the table noted in the statute plus the percentage of tolerance as a matter of right. It is contended by him that the charge filed by the State alleges a weight of 32,950 pounds for the axles 3 and 4. The distance between these two axles is four feet and the weight for this distance as set out in the statutory table is 32,000 pounds. With the allowance of the tolerance of three per cent—as these axles are tandem axles—the total permissible weight allowed for these two axles would be 32,960 pounds. It is conceded by the State that, considering the tolerance allowance, there was no overweight on the tandem rear axles. It is the claim of the appellant that he was found guilty of an excess load on axles 2 and 4 and also of an excess load and weight on axles 3 and 4. It is the contention of the appellant that inasmuch as the State concedes that there was no overloading of the rear tandem axles, he could not be found guilty as charged.

■ III. It is the appellant's particular claim that where there is a reference to a "group of axles of any vehicle, or any combination of vehicles" and a later reference to "the extreme axles of the group" there is an ambiguity. We do not think this is true. The reference is first to the "group of axles of any vehicle." The truck trailer, as previously set forth, is a vehicle. The extreme axles of this group are axles 2 and 4. In the alternative, reference is made to a combination of vehicles. We must keep in mind the purpose of this legislation to which reference has previously been made. The load on the trailer truck is the important thing to consider. Although this is a penal statute and is subject

to strict construction, yet it must not be given a narrow meaning if to do so would be contrary to the plain intention of the legislature. Commonwealth v. Burall, 146 Pa. Super. 525, 22 A.2d 619, 622, and cited cases. We find no ambiguity. Even if there were ambiguity, which is not conceded, it should be the purpose of a court in seeking construction of a statute to "* * * look not only to the language but to the subject matter of the act, the object to be accomplished, or the purpose to be subserved, and the law should be construed to give effect to the legislative purpose." Case v. Olson, 234 Iowa 869, 872, 873, 14 N.W.2d 717, 719, and cases cited.

IV. Despite the fact the State has conceded that considering the tolerance allowance set out in the statute there was no overloading on the tandem rear axles, yet we see no necessity for reversal. There were two alleged violations set out in the summons. There is no question of the appellant's guilt on the charge of overloading of the extreme axles 2 and 4. The violation of the applicable statute is termed a misdemeanor. Section 321.482. The fine imposed was $100. It is within the discretion of a trial court to impose a sentence or fine not in excess of the maximum penalty authorized by law. State v. Small, 233 Iowa 1280, 1284, 11 N.W.2d 377, 379.

We find no reason for reversal.—Affirmed.

All JUSTICES concur.