**APPLE VALLEY RED–E–MIX, INC., Respondent,**

v.

**STATE of Minnesota by its DEPARTMENT OF PUBLIC SAFETY, et al., Appellants.**

**No. C9–83–1078.**

Supreme Court of Minnesota.

Aug. 3, 1984.

Hubert H. Humphrey, III, Atty. Gen., Linda F. Close, David L. Valentini, Spec. Asst. Attys. Gen., St. Paul, for appellants.

John Paul Martin, St. Paul, for respondent.

AMDAHL, Chief Justice.

The Minnesota Department of Public Safety appeals from an order for judgment entered by the Dakota County District Court declaring that the two-wheeled units operated by Apple Valley Red-E-Mix, Inc. (hereafter Red-E-Mix) are "trailers" within the meaning of Minn.Stat. § 168.011, subd. 13 (1982), directing the Department of Public Safety to register the units as trailers separate from the cement trucks by which they are drawn and awarding Red-E-Mix judgment for $10,605 and costs and disbursements.

Red-E-Mix is a Minnesota corporation which produces and transports ready-mix cement and owns and operates 100 trucks with cement mixers mounted on the truck chassis. Approximately 50–60 of these trucks are equipped with a metal unit mounted on two wheels and attached to the rear of the trucks. The unit primarily serves to extend the wheelbase of the truck in order to carry a portion of the weight of the ready-mix cement (up to 12,000 pounds) which is loaded in the chassis drum. The unit is also designed and used for carrying rakes, shovels, and ready-mix chutes which weigh between 850 and 1,000 pounds. It is not motorized or self-propelled but is designed to be drawn by another towing vehicle to which it is attached with u-bolts and spot-welding. A separate steering system aids the handling of the unit around corners. Hydraulic lifts located in the cab of the cement mixer truck are employed to raise the unit up off the road surface. The pressure controls on the hydraulic lift are located outside the truck and, by law, must be preset so that the weight carried by the unit cannot be varied by the operator during transit. Minn.Stat. § 169.825, subd. 14 (1982). Red-E-Mix admits that the primary purpose of the unit is to redistribute the weight of the cement load so that the weight on each of the other axles is decreased.

For the past 7 years, the State of Minnesota has considered the units to be "trailers" for registration and taxation purposes under Minn.Stat. § 168.011, subd. 13. Thus the certificates of title and yearly registration tax notifications have consistently designated the units as "trailers." Nevertheless, the Department of Public Safety now insists that the units in question are "variable load axles" under Minnesota Statutes chapter 169 and has required Red-E-Mix to pay an additional $10,605 registration tax.

The two statutes involved in this controversy are Minn.Stat. ch. 168, the Motor Vehicle Registration, Taxation, Sales and Dealers Act, and Minn.Stat. ch. 168, the Highway Traffic Regulation Act. In

the definition section of chapter 168, a "trailer" is "any vehicle designed for carrying property or passenger on its own structure and for being drawn by a motor vehicle * * *." Minn.Stat. § 168.011, subd. 13 (1982).

Minn.Stat. § 169.01, subd. 10 (1982), defines "trailer" as "every vehicle without motive power designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that no part of its weight rests upon the towing vehicle." Because the entire weight of the mechanism involved here rests upon the cement truck chassis when its wheels are raised, the definition of "trailer" found in chapter 169 does not apply. However, because the unit is designed for carrying property on its own structure and for being pulled by a motor vehicle, the definition of "trailer" found in chapter 168 does apply. While the state places some significance on the fact that the burden of the weight of the cement is shared by the unit and the cement truck, the exclusion in Minn.Stat. § 169.01, subd. 10 (1982), of units the weight of which rests on the towing vehicle, contains no such limitation. Similarly, the state's emphasis on the fact that the purpose of the mechanism is not *primarily* for carrying property such as rakes, shovels and ready-mix chutes and therefore is not *designed* for carrying property, finds no support in the statutory definition of Minn.Stat. § 168.011, subd. 13 (1982).

There is no definition for "variable load axle", or any other type of axle, to be found within chapter 168, the tax and registration statute. However, chapter 169, the regulation statute, defines three different types of axles. *See* Minn.Stat. § 169.825, subds. 3, 6, 7 (1982). The variable load axle "means any axle which is specifically designed so that, through use of an actuating control, the wheels may be lifted so that the wheels do not contact the road surface

or may be lowered to carry loads of varying weights when in contact with the road surface." Minn.Stat. § 169.825, subd. 7 (1982). Obviously, the mechanism here at issue also fits this definition. The factual holding of the trial court that the unit is a "trailer" under chapter 168 is therefore not clearly erroneous.

Rather, the critical issue in this case is a legal question and one of statutory construction. The lower court held it was not inconsistent to tax the unit as a "trailer" under chapter 168 and to regulate it as a "variable load axle" under chapter 169. Because the language in each statute is unambiguous, we must determine if chapter 168 and chapter 169 must be construed together. If they must be applied in a complementary manner, as the state urges, then the most particular and more recent enactment of the chapter 169 definition of "variable weight axle" [1] must prevail under accepted canons of statutory construction. *See* Minn.Stat. § 645.26, subd. 1 (1982).[2]

The general rule is that statutes in pari materia should be construed together. *Ausman v. Hoffmann,* 208 Minn. 13, 17, 292 N.W. 421, 423 (1940). Statutes "in pari materia" are those relating to the same person or thing or having a common purpose. Black's Law Dictionary (rev. 5th ed. 1979). The cases in Minnesota applying this rule to chapter 169 have all involved separate sections within the Highway Traffic Regulation Act. *See Martinco v. Hastings,* 265 Minn. 490, 495–96 n. 2, 122 N.W.2d 631, 637–638 n. 2 (1963) (statutes dealing with rights and duties of emergency vehicle operators must be construed together); *Rogers v. Minneapolis Street Railway Co.,* 218 Minn. 454, 458, 16 N.W.2d 516, 518 (1944) ("All the statutory provisions cited are part of the highway traffic regulation act * * * and consequently should be construed together.")

---

1. The "variable load axle" definition was enacted in 1981.

2. Minn.Stat. § 645.26, subd. 1 (1982), dictates that when a conflict between two provisions, in the same or another law is irreconcilable, "the special provision shall prevail and shall be con-

strued as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail."

*Accord Travis v. Collett,* 218 Minn. 592, 599, 17 N.W.2d 68, 72–73 (1944).

In contrast, chapter 168 is a registration and taxation statute. Its purposes are different from those of the regulation statute and there is precedent for construing taxation statutes wholly separately from statutes involving the police powers. *See, e.g., Jefferson Highway Transportation Co. v. City of St. Cloud,* 155 Minn. 463, 466–67, 193 N.W. 960, 961 (1923) (license issued by the state under the statute granting taxation, licensing or registration authority evidenced the payment of a property tax, and was not a police measure as was the licensing and regulation of cabs by the city under ordinance). *See also City of Duluth v. Northland Greyhound Lines,* 236 Minn. 260, 266–67, 52 N.W.2d 774, 778 (1952) (describing the precursor to chapter 168 as both a property tax and a privilege tax; a property tax in lieu of other taxes and a privilege tax imposed for using, building and maintaining the public highways).

In *Anderson v. Lappegaard,* 302 Minn. 266, 268, 224 N.W.2d 504, 506 (1974), we discussed the interaction between chapters 168 and 169. The owner of a truck carrier service was held liable under Minn.Stat. § 168.013, subd. 3 (1971), for the payment of taxes based upon the weight of one of his truck tractors which was in excess of its registered weight. The owner was required to increase the registered weight of the vehicle despite the fact that, under Minn.Stat. § 169.83, subd. 2(1), he would not be allowed to operate his truck tractor at that gross registered weight. The state distinguishes *Anderson* on the ground that the court applied both penalty and tax aspects from chapter 168 and only used chapter 169 to define the allowable weights. This argument fails for two reasons. First, while it is true that both the penalty and the tax aspects of chapter 168 were involved, it was the regulation in Minn. Stat. § 169.83 which forbade the future operation of the truck-tractor at the higher weight level without a special permit. We said it was "not arbitrary, capricious, or unreasonable to make him pay a tax for the use he has made of the highway and for

which he had not paid a tax even though he may not do so in the future without a special permit." *Id.* at 272, 224 N.W.2d at 508. The practical effect of the *Anderson* decision was to hold that the two statutes do not have to be reconciled because they serve different purposes. The *Anderson* opinion quoted cases from two other jurisdictions which reinforce this interpretation. In *Stein v. Kentucky State Tax Commissioner,* 266 Ky. 469, 473, 99 S.W.2d 443, 445 (1936), the court held that "a government may enforce collection of a license or excise tax on the doing of a prohibited act * * * the payment of the tax being no justification for doing the forbidden act." Similarly, in *Benson v. City of Long Beach,* 61 Cal.App.2d 189, 142 P.2d 440 (1943), the court refused to refund a license fee paid for operating the business of placing bets on race horses, reasoning that "the legality of a license tax does not depend on the legality of the business for which the tax is required." 61 Cal.App.2d at 192, 142 P.2d at 441.

Second, as in Minn.Stat. § 168.011 (1982), the provision of chapter 168 at issue in *Anderson* (§ 168.013, subd. 3 (1971)) cross-referenced to chapter 169. Nevertheless we regarded the two chapters as separate in application. In *Anderson* the two statutes, by explicit statutory reference, were to be read in conjunction with one another. The legislature could have made the same explicit reference in chapter 168 when the definition of "variable weight axle" was added to chapter 169. The fact that there is no such explicit reference is evidence that the legislature does not consider the presence of an "axle" to be relevant for purposes of registration, taxation and licensing.

As the trial court declared, it is highly unlikely that if the legislature intended to change this unit's status as a trailer for taxation purposes, it would have approached the problem by adding a definition in a separate regulatory statute.

The Iowa Supreme Court described the purpose of Iowa's axle weight regulation

statute which is similar to that found in chapter 169 as follows:

The necessity for legislation limiting the axle load on trucks is very definitely shown in the report of the Maryland Truck Weight Commission to the 1951 General Assembly of that state. The findings of the commission were the result of a study made of the effect of the driving of trucks of varying axle loads on a particular strip of pavement in that state.

*State v. Balsley,* 242 Iowa 845, 847, 48 N.W.2d 287, 288 (1951). The court further declared that the apparent purpose of the statute was to prevent the overloading of trucks and the resulting deterioration of the paving, as well as to avoid danger to persons traveling on the highways. 242 Iowa at 850, 48 N.W.2d at 290. *Accord Ross v. Alexander,* 74 Mich.App. 666, 670–71, 254 N.W.2d 605, 607 (1977) (per curiam). While it can be said that this purpose can be accomplished by both a registration and a regulation statute, the Pennsylvania court in *Commonwealth v. Dunn,* 478 Pa. 35, 385 A.2d 1299 (1978), discriminated between "highway safety overweight" and "registration fee overweight" and held that "[o]ne could, of course, be in violation of both sections simultaneously." 478 Pa. at 43, 385 A.2d at 1302.

The differing purposes of the two statutes, the lack of an explicit statutory mandate to construe the sections together and precedent for construing taxation statutes separately from other provisions of law argue for affirmance of the trial court's holding. The unit is clearly a "trailer" within the chapter 168 definition. "We think that the statute is unambiguous, but even if it is open to two constructions the applicable rule is that it must be construed in favor of the taxpayer." *Mondale v. Commissioner of Taxation,* 263 Minn. 121, 126, 116 N.W.2d 82, 86 (1962). *Accord Charles W. Sexton Company v. Hatfield,* 263 Minn. 187, 195, 116 N.W.2d 574, 580 (1962) ("We are not permitted to extend the scope of a tax-levying statute beyond the clear meaning of the language used.") (Footnote omitted.) As we stated in *Martinco,* "[i]f

there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposely omits or inadvertently overlooks." 265 Minn. at 497, 122 N.W.2d at 638. (Citation omitted.)

The decision of the trial court that the two-wheeled units are trailers under Minn. Stat. § 168.011, subd. 13 (1982), that the Department of Public Safety register the units as trailers, and that Red-E-Mix be awarded judgment for $10,605 plus costs and disbursements is affirmed.

Affirmed.