**John DOE, M.D., Petitioner, Appellant,**

v.

**MINNESOTA STATE BOARD OF MEDICAL EXAMINERS, Respondent.**

No. C9-87-1882.

Supreme Court of Minnesota.

Jan. 27, 1989.

Rehearing Denied April 18, 1989.

Marcy S. Wallace, St. Paul, for appellant.

Paul G. Zerby, Asst. Atty. Gen., Minneapolis, for respondent.

AMDAHL, Chief Justice.

We are asked in this case to decide whether it is consistent with the Minnesota Government Data Practices Act and other statutes for the Minnesota State Board of Medical Examiners following a contested case disciplinary action against a physician to include in its final decision, which is a public document, a discussion of dismissed complaints.

Respondent State Board of Medical Examiners (the Board) commenced disciplinary proceedings against the Appellant, John Doe, M.D. (Dr. Doe), a psychiatrist

licensed in Minnesota, for various alleged acts of unethical and unprofessional conduct under Minn.Stat. § 147.021, subd. 1(g), (i) and (k) (1984) (renumbered section 147.-091 (1986)) and Minn.Stat. § 147.02, subd. 3(10) (1966). The alleged misconduct arose out of complaints by patients that Dr. Doe engaged in sexual relations with five former or current patients, and that Dr. Doe also misprescribed medication to one of the five women. The matter was heard by an administrative law judge (ALJ). The hearing began on December 18, 1985 and continued over 23 hearing dates, concluding on March 24, 1986. The record remained open and a late exhibit was received on June 24, 1986. The ALJ issued his findings of fact, conclusions and recommendations on July 1, 1986 and the matter was referred to the Board. Oral arguments were heard before the Board in April 1987. The Board consists of 11 members; at least seven of whom are required by statute to be licensed physicians, and three board members who are "public members." Minn. Stat. § 147.01, subd. 1 (1986). The matter was considered by eight Board members. Three members had participated in the investigation of the complaints and did not participate in the deliberations.

The Board issued its "Findings of Fact, Conclusions and Order" on June 22, 1987. The Board reprimanded and fined Dr. Doe $1,000 for misprescribing medications to a patient, "Ms. A." (names of patients are not used in the Board's findings.) The Board "dismissed with prejudice" complaints against Dr. Doe which arose from his engaging in sexual relations with four former patients, and found that allegations of sexual improprieties with Ms. A while she was a patient of Dr. Doe were not credible. Three memoranda accompanied the Findings, Conclusions and Order of the Board. The first memorandum incorporated by reference into the Board's Conclusions of Law, discussed the complaint against Dr. Doe for misprescribing medication and the allegation of sexual conduct with patient A. Several other issues were discussed in this memorandum including a claimed defense of laches, and the dismissal of a complaint which was not actively pursued at the contested case hearing. Two other memoranda were filed dealing with the issue of Dr. Doe's sexual relations with former patients. The first, by four members of the Board, concluded that it was not unprofessional conduct for Dr. Doe to engage in sexual relations with former patients B, C, D or E. Four other Board members issued a separate memorandum concluding that Dr. Doe's conduct with respect to patients B, D, and E did constitute unprofessional conduct and was harmful to the patients. The Board was thus evenly split on the question of whether the doctor's conduct with former patients was unethical or unprofessional and the complaints were "dismissed with prejudice."

The decision issued by the Board detailed the doctor's professional and social relationship with each of the five patients. The decision detailed the doctor's professional background and training, his psychotherapeutic approach, and discussed his marriage and divorce in 1962, his later relationship with his wife, and her suicide in 1964. An appendix summarized expert testimony at the hearing. The entire document is 73 pages in length.

Before the decision of the Board was publicly released, Dr. Doe commenced an action in district court pursuant to Minn. Stat. § 13.08, subd. 2 seeking a temporary and permanent injunction to prevent the Board from making public the portions of its decision related to the dismissed charges of sexual improprieties with former patients. The action was brought under the pseudonym John Doe, M.D., and the district court granted a motion for *in camera* review of the Board's decision. The court denied Dr. Doe's application for a temporary restraining order to prohibit the public release of the document. Dr. Doe then obtained a writ of prohibition from the court of appeals staying the public release of the decision and directing the district court to hear the action for a permanent injunction on an expedited schedule. The district court, on motions for summary judgment, granted the permanent injunction on August 28, 1987, ordering that only limited portions of the

Board's decision could be made public, specifically removing all references to the dismissed charges. The district court did not rule on Dr. Doe's request for attorneys fees. The Board filed notice of appeal on September 23, 1987.

The court of appeals reversed the district court, *John Doe, M.D. v. Minnesota State Board of Medical Examiners*, 419 N.W.2d 619 (Minn.App.1988), holding that the Board's decision, including its discussion of dismissed complaints, was "public" data under the Minnesota Government Data Practices Act (MGDPA), Minn.Stat. § 13.01 *et seq.;* the Medical Practices Act (MPA), Minn.Stat. § 147.01 *et seq.;* the Minnesota Administrative Procedures Act, Minn.Stat. § 14.01 *et seq.:* and state administrative rules. The court of appeals denied attorneys fees on appeal, but remanded the question of attorneys fees at the district court level to that court, since no ruling had been made prior to the appeal. We granted review of the court of appeals decision.

Dr. Doe asserts that the court of appeals misconstrued the applicable statutes in holding that the Board's decision was public data in its entirety. He also claims an entitlement to attorneys fees at this level. Also before the court is a motion by Dr. Doe to strike certain portions of the Board's brief.

■ Neither party disputes any of the facts in this case. The only dispute is the construction to be given to the relevant statutes. The construction of a statute is a question of law and is subject to *de novo* review on appeal. *Hibbing Educ. Asso. v. P.E.R.B.*, 369 N.W.2d 527, 529 (Minn.1985). We need not give any weight to the court of appeals' construction of the applicable statutes.

The starting point for analysis of the statutory framework in this case is the general rule stated in the Minnesota Government Data Practices Act, Minn.Stat. § 13.03, subd. 1 (1986):

"All government data collected, created, received, maintained or disseminated by a state agency * * * shall be public unless classified by statute * * * with re-

spect to data on individuals, as private or confidential."

"Private data on individuals" is defined as data which is made "not public" by statute, and is accessible to the individual subject of the data. Minn.Stat. § 13.02, subd. 12 (1986). "Confidential data on individuals" is made "not public" by statute and is not available to the individual. *Id.* subd. 3. "Public data on individuals" is data which is accessible to the public. Minn.Stat. § 13.02, subd. 15 (1986).

■ Another provision of the MGDPA, Minn.Stat. § 13.41 (1986), governs data generated by licensing agencies, such as the Board of Medical Examiners. Subdivision 4 of section 13.41 affirmatively classifies certain Board documents as public data:

Subd. 4. Public data. Licensing agency minutes, application data on licensees, orders for hearing, *findings of fact, conclusions of law and specification of the final disciplinary action contained in the record of the disciplinary action are classified as public,* pursuant to section 13.02, subdivision 15. The entire record concerning the disciplinary proceeding is public data pursuant to section 13.02, subdivision 15, in those instances where there is a public hearing concerning the disciplinary action.

Minn.Stat. § 13.41, subd. 4 (1986) (emphasis added). Accordingly, the documents in this case, the Board's "Findings of Fact, Conclusions and Order," are public data under the MGDPA.

■ Another statute relevant to the classification of the Board's "Findings of Fact, Conclusions and Order" is Minn.Stat. § 147.01 (1986), a statute which directly governs the Board of Medical Examiners. Subdivision 4 classifies as "confidential and privileged" records generated in Board proceedings, except for a "final decision."

Subd. 4. **Disclosure.** Subject to the exceptions listed in this subdivision, all communications or information received by or disclosed to the board relating to any person or matter subject to its regulatory jurisdiction, and all records of any

action or proceedings thereon, except a final decision of the board, are confidential and privileged and any disciplinary hearing shall be closed to the public.[1]

Section 147.01, subd. 4 does not operate to classify the Board's "Findings of Fact, Conclusions and Order" as anything other than public data. Although the term "final decision" is not defined in the statute, the meaning of that term is consistent with the reference in section 13.41, subd. 4 to "findings of fact, conclusions of law and specification of the final disciplinary action." These statutes do not conflict, as Dr. Doe asserts, but can be read harmoniously.[2] Section 147.01, subd. 4 and section 13.41, subd. 4 both govern the same subject matter in that they both relate to the question of what data generated by the Board in a disciplinary action will be public. Because both statutes have the same purpose, they are *in pari materia* and should be construed together. *See Apple Valley Red–E–Mix Inc. v. State*, 352 N.W.2d 402, 404 (Minn.1984). Read together, a "final decision" of the Board of Medical Examiners for purposes of the classification of data as public or private, includes "Findings of Fact, Conclusions of Law and specification of the final disciplinary action contained in the record of the disciplinary action." This analysis is also consistent with the requirements in the Administrative Procedures Act which govern what data must be contained in decisions of agencies following contested case hearings. *See* Minn.Stat. §§ 14.61 and 14.62, subd. 1 (1986).

 Our analysis of the statutes leads us to the conclusion that the Board's "Findings of Fact, Conclusions and Order" in this case is a "final decision" within the meaning of Minn.Stat. § 147.01, subd. 4 (1986) and therefore is not classified as private, but rather is classified as public by Minn.Stat. § 13.41, subd. 4 (1986). This does not end our analysis, however. These statutes classify the type of document involved as public, but do not define the scope of data which is classified as public within the document. Clearly, data is not automatically made public simply because it is contained in an otherwise public document. The Board cannot purposely or inadvertently change private data, as classified by statute, into public data by placing that data within a public document, such as the Board's Findings, Conclusions and Order. We must therefore direct our analysis to the question of whether the discussion in the Board's decision of dis-

1. It is not immediately clear that this statute applies in this case. Section 147.01, subd. 4, states that certain items are *"confidential and privileged"* rather than "private." Arguably, section 147.01, subd. 4, is not a statute which classifies data for purposes of the MGDPA. Amendments to section 147.01, subd. 4 in 1985 deleted a provision which had previously classified certain board records as non-public data under the MGDPA. *See* Act of May 28, 1985, ch. 247, § 3, 1985 Minn.Laws 788, 789–790. Furthermore, under the pre-amendment version of the statute, the classification of data as "confidential and privileged," was not a reference to the MGDPA, but to another statute, Minn.Stat. § 595.02, subd. 1(e), which concerns information disclosures by government officials testifying as witnesses in trials.

The court of appeals held that section 147.01, subd. 4 was applicable by reading "confidential" to mean "private." *See* Minn.R. 1205.0200, subp. 3 (1987) (providing that data classified as "confidential" but which is available to the individual data subject should be treated as "private" data). It is apparent, however, that the 1984 version of section 147.01, subd. 4 contemplated that the data would be "confidential and privileged" for a purpose totally separate from any desire to classify the data as "private" under the MGDPA. The 1985 amendments leave it unclear whether section 147.01, subd. 4 currently classifies data as "private" under the MGDPA. We need not resolve this issue, however, because of our holding that section 147.01, subd. 4 can be read harmoniously in this case with section 13.41, subd. 4.

2. We find no merit in appellant's contention that the 1985 amendments to Minn.Stat. § 147.01, subd. 4 were intended to limit the scope of public data in Board decisions. *See* Act of May 28, 1985, ch. 247, § 3, 1985 Minn. Laws 788, 789–790. Subdivision 4(b), added by the 1985 amendments, requires that when the Board imposes disciplinary measures, the name and business address of the physician, the nature of the misconduct, and the disciplinary action taken are public data. The legislative history concerning the amendments is incomplete and inconclusive. After examining the available legislative history, we cannot conclude, as Dr. Doe asserts, that this subdivision was intended to limit the scope of information which can be made public by the Board in its "final decision" under section 147.01, subd. 4.

missed complaints exceeded the scope of what could properly be made public in the decision.

∎ The MGDPA and the MPA operate to establish a complex set of rules which classify various data generated in disciplinary hearings as "public, "private," "confidential" and "privileged." *See* Minn.Stat. §§ 13.41, subds. 2, 3 and 4; and 147.01, subd. 4 and 4(b) (1986). Section 13.41, subd. 2, classifies as private data: "the record of any disciplinary proceeding except as limited by subdivision 4." Subdivision 4, as already discussed, classifies as public data: "findings of fact, conclusions of law and specification of the final disciplinary action contained in the record of the disciplinary action." Section 147.01, subd. 4 of the MPA provides that the "disciplinary hearing shall be closed to the public." It is impermissible for the Board to violate these provisions by incorporating private data into its final decision. It was improper in this case for the Board to incorporate large portions of the disciplinary record into its decision, and to add an appendix summarizing testimony from the closed disciplinary hearing. This defeats the purpose of the statutes which make the disciplinary record private and the hearing closed to the public.

The scope of data which can properly be made public is almost always defined by statute. Section 13.03, subd. 1 of the MGDPA, as already noted, provides that data is "public unless classified by statute, or temporary classification * * * or federal law * * * as private or confidential." The rules which operate to define the scope of the "public data" in the Board's decision are not entirely statutory, however. In limited situations administrative rules and judicial rules pertaining to the conduct of legal actions can operate to change the classification of data. Minn.Stat. § 13.03, subd. 4 (1986). This can occur in limited situations only, because agency rules cannot classify data as "private" or make data inaccessible to the public "unless there is a

state statute or federal law as the basis for the classification." Minn.R. 1205.0200, subp. 9 (1987).

∎ The rules on hearings before the Board of Medical Examiners and specifically Minnesota Rules 5615.1100 (1987) apply in this case to limit the scope of data which can be made public in the Board's final decision. The statutory basis for the rule is Minn.Stat. § 13.03, subd. 4 (1986), because this rule is an "administrative rule pertaining to the conduct of legal actions * * *." *Id.* The rule provides:

**5615.1100 FORM OF DECISION AND FINDINGS.**

Every decision and order *adverse to a party to the proceeding* shall be in writing and, except when such decision or order is made pursuant to stipulation with or the consent of the respondent, shall contain a statement of findings or reasons, a determination of the issues presented and the *penalty, if any,* or decision of the board. The findings shall consist of a statement of the conclusions upon each contested issue of fact necessary to the decision.

(emphasis added)

The Board relies on this rule to argue that dismissed complaints of misconduct are public data because the rule requires a decision of the Board to discuss and determine all issues presented "and the penalty, if any * * *." The Board argues, and the court of appeals agreed, that the "penalty, if any" language means that dismissed complaints are properly made part of the decision of the Board, and therefore are public. We disagree.

In order for this rule to apply in the way the Board argues, the decision of the Board must be "adverse to a party." In this case, the Board's decision to dismiss complaints against Dr. Doe is not adverse to any party. It is certainly not adverse to Dr. Doe, and it cannot be adverse to the Board, since the Board is not a party, but rather is the decisionmaker in the case.[3] The Board's

---

**3.** Although the dissent points out that the Board is, by its own rules, technically regarded as a "party," we cannot view its role in adjudicating

disciplinary actions as the same as the role typically played by a party in ·an adversarial proceeding. A decision rendered by a judge or

decision can contain data related to issues in the case only when the decision is adverse to a party. Therefore it follows that when complaints are dismissed, they cannot become part of the Board's decision and are not "public data" under the MGDPA. We hold that under the specific statutes and rules applicable to this case and under these facts, the State Board of Medical Examiners could not include in its "Findings of Fact, Conclusions and Order" data related to the dismissed charges of sexual misconduct against Dr. Doe.

We note in passing the argument raised by the Board that making its discussion of dismissed charges public would serve the important public policy end of educating the profession. Although this may be true in other cases, the educational function served by releasing the Board's decision in its entirety has been mooted in this case by recent legislative enactments which define the limits of acceptable professional conduct by psychotherapists engaging in sexual relationships with former patients. Under recent enactments, had Dr. Doe engaged in the same conduct with former patients today, rather than during the 1960's, 1970's and early 1980's, he may have been subject to civil liability and criminal penalties. *See* Minn.Stat. §§ 609.-341, .344, .345 (1986), and Minn.Stat. § 148 A.02 (1986). We can perceive no educational function useful to the profession which would be gained by permitting the Board's decision to be made public, when that decision is useful merely to establish past standards of professional and ethical conduct, not present standards.

Minnesota Statute § 13.08, subd. 4 (1986) provides that a person bringing an action to compel compliance with the MGDPA may be entitled to reasonable attorneys fees. We hereby grant appellant's request for attorneys fees for this appeal in the amount of $400, and remand to the district court for a determination of reasonable attorneys fees at that level. We also deny appellant's motion to strike portions of the respondent's brief.

Reversed and remanded to the district court.

POPOVICH, J., participated at the hearing, but took no part in the deliberations or decision of this case.

WAHL, Justice (concurring in part and dissenting in part).

In my opinion, the statutes at issue require the final decision of the board be made public and do not allow this court to select which portions should be redacted from the document.

The Minnesota Government Data Practices Act, Minn.Stat. § 13.41, subd. 4 (1986), provides that "findings of fact, conclusions of law and specification of the final disciplinary action contained in the record of the disciplinary action are classified as public * * * *." Nothing has persuaded me that this statute does not apply to this case, both in its requirement that the final document be public, and in its specification of the findings of fact and conclusions of law as public. The Data Practices Act reflects the legislature's choice as how to best balance the right to privacy and the public's need to know. Generally, all agency decisions in contested cases are required to be made public under the Administrative Procedure Act, Minn.Stat. ch. 14 (1986). Specifically, every decision rendered by an agency in a contested case is required to be in writing, "and shall include the agency's findings of fact and conclusions on all material issues." Minn.Stat. § 14.62, subd. 1 (1986).

These statutes not only require the final decision be made public but also specifically require findings of fact and conclusions of law on all material issues also be made public. There are no exceptions for contested issues ultimately resolved in favor

---

an adjudicative body such as the Board cannot be regarded as being adverse to the judge or to the Board itself. The dissent's interpretation of Minn.Rule 5615.1100 would require a written decision from the Board in all instances, since any decision in a disciplinary action against a licensee then would be adverse to either the licensee, or to the Board itself. Such an interpretation would leave as meaningless the distinction drawn in Rule 5615.1100 between decisions which are adverse to a party, and those which are not.

of the respondent. The majority's reliance on administrative rules to create this exception is misplaced.

Minnesota Rule 5615.1100 (1987) require the final decision of the board to contain a statement of the findings, a determination of the issues presented, and the penalty, if any, or decision of the board. The majority counteracts this explicit language by relying on the phrase "adverse to a party," and argues that issues which do not result in discipline cannot be considered as adverse, since the board is not a party. This position ignores the definition of "party" governing the rule, provided in Minn.R. 5615.-0100, subp. 4 (1987): " 'Party' *includes the board,* the respondent, and any person * * * who has been permitted to appear in the proceeding." Under the terms of the rule, a decision may in fact be adverse to the board and therefore is to be made public.

The majority's position also makes the language of the rule meaningless. Under the holding of the majority, issues resolved in favor of the respondent are not to be included in the final decision, despite the clear requirement that the issues presented and the board's decision must be in writing.

Finally, the majority places undue weight on the use of the term "dismissed" in this case. The allegations of sexual misconduct were not frivolous, in fact the board found that the alleged conduct had occurred and was harmful to at least three of the complaining women. No penalty was imposed, however, because any penalty requires the affirmative vote of six members of the board. Minn.R. 5615.1000, subp. 1 (1987). The board's final decision sets out, in accordance with both the applicable statutes and rule, the findings of fact regarding the allegations of sexual misconduct, the issues raised by the allegations, and the board's final decision and the reasons therefor. Two supplemental memoranda set forth the bases upon which four members of the board felt no penalty was warranted and four members felt penalty was appropriate. Dismissal of the charges was the result of the stalemate rather than a conclusion that the allegations were unfounded, as the majority implies. The result compelled by the statutes is that the decision be made public.

Accordingly, I must respectfully dissent to the holding that data related to dismissed complaints in a contested case disciplinary action cannot properly be made public in the Board's final decision.