Martin H. **BUER,** et al., Appellants,

v.

**ATWATER STATE BANK, Independent State Bank of Minnesota,**
Respondents.

No. C1–91–732.

Court of Appeals of Minnesota.

Dec. 3, 1991.

Mark G. Wermerskirchen, Neeser & Darval, Willmar, for appellants.

David C. Moody, Schmidt, Thompson, Thompson, Johnson & Moody, Willmar, for Atwater State Bank.

John G. Troyer, Briggs & Morgan, Minneapolis, for Independent State Bank of Minnesota.

Considered and decided by KLAPHAKE, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

KLAPHAKE, Judge.

Appellants, former agricultural land owners, challenge summary judgment granted to respondents, two grantee banks who acquired the land by deed in lieu of foreclosure. After one bank sold its interest to the other, appellants initiated an action claiming the sale violated their statutory right of first refusal under Minn.Stat. § 500.24, subd. 6(a) (1990). The trial court concluded, and we agree, that the sale was not made to a "third party" within the meaning of the statute and therefore the right of first refusal did not accrue. We affirm.

## FACTS

Respondent Atwater State Bank (ASB) made agricultural loans to Martin Buer Farms, Inc., appellants Martin and Annette Buer (the Buers), and their three sons and three daughters-in-law, all of whom operate farms in Kandiyohi County. Respondent Independent State Bank of Minnesota (ISBM) held a participation interest in some of ASB's loans to the family. By October 7, 1986, all of the loans to the Buer family were in default.

As part of an agreement settling the debt and restructuring and extending other loans to the Buer family, Martin and Annette Buer conveyed their 407–acre farm by quit claim deed to ASB and ISBM as tenants in common. In April 1989, after settling an action in which ISBM and ASB disputed the value of their respective interests in the land, ISBM sold its interest to ASB for $150,500 without first offering it to the Buers.

ASB later received an offer of $369,000 for the land from the Buers' sons and daughters-in-law. At that time, ASB extended the same offer to the Buers. The Buers exercised their statutory right of first refusal under Minn.Stat. § 500.24, subd. 6(a) (1990) and now own the property.

The Buers subsequently initiated an action against ISBM and ASB, claiming that they should have been offered ISBM's one-half interest at ASB's purchase price of $150,500. The Buers challenge the trial court's grant of summary judgment to ISBM and ASB.

## ISSUE

Did the trial court err in holding that the statutory right of first refusal held by the Buers under Minn.Stat. § 500.24, subd. 6(a) (1990) did not apply to the sale of an undivided one-half interest in agricultural property from one co-owner bank to another?

## ANALYSIS

■ On appeal from summary judgment, this court reviews the record to determine whether issues of material fact exist and whether the trial court erred in its application of the law. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989). Construction of Minn.Stat. § 500.24 is a question of law subject to de novo review. *Harbal v. Federal Land Bank of St. Paul*, 449 N.W.2d 442, 446 (Minn.App.1989), *pet. for rev. denied* (Minn. Feb. 21, 1990); *see Doe v. Minnesota State Bd. of Medical Examiners*, 435 N.W.2d 45, 48 (Minn.1989) (statutory construction subject to de novo review).

**784**

Minn.Stat. § 500.24, subd. 6(a) (1990) provides:

A state or federal agency, limited partnership, or a corporation may not lease or sell agricultural land or a farm homestead before offering or making a good faith effort to offer the land for sale or lease to the immediately preceding former owner at a price no higher than the highest price offered by a third party that is acceptable to the seller or lessor.

The purpose of this statute is to

encourage and protect the family farm as a basic economic unit, to insure it as the most socially desirable mode of agricultural production, and to enhance and promote the stability and well-being of rural society in Minnesota and the nuclear family.

Minn.Stat. § 500.24, subd. 1 (1990).

Neither the statute nor the case law defines who is a "third party" for the purpose of applying Minn.Stat. § 500.24, subd. 6(a). However, under its commonly understood meaning, a third party must be a stranger to the agreement between the principals. *See Rausch v. Julius B. Nelson & Sons, Inc.*, 276 Minn. 12, 19, 149 N.W.2d 1, 6 (1967). The statutory reference to a "price offered by a third party that is acceptable to the seller" implies that the third party and the seller are not the same. *See* Minn. Stat. § 500.24, subd. 6(a). Here, ISBM and ASB were intimately involved in the loans made to the Buers and that involvement occurred prior to the Buers' default. In lieu of foreclosure and to settle the debt, the Buers deeded the land to ISBM and ASB as tenants in common. Each held an undivided one-half interest. These facts show ISBM and ASB are not third parties under Minn.Stat. § 500.24, subd. 6(a).

We are satisfied that the legislature did not intend Minn.Stat. § 500.24, subd. 6(a) to govern the factual situation present here. Specifically, the statute references no undivided partial interests. Where partial interests are referenced, they consist of full interests and must be "contiguous and compact" to ensure access to and value of the remaining property. *See* Minn.Stat. § 500.24, subd. 6(c) (1990). In addition, if the statute were allowed to govern undivided interests under these facts, a foreclosing bank and a farmer would continue as co-owners, which subverts the statutory purpose of protecting the family farm as a basic economic unit. Finally, the statute was intended to allow farmers to purchase at market price by giving them an opportunity to meet any other market price offer. Clearly, transferring undivided interests is not normal market activity.

Not triggering a statutory right of first refusal upon the transfer to ASB also serves the remedial purpose of the statute. Allowing lenders to co-own agricultural land in lieu of foreclosure and to transfer their interests between themselves encourages them to provide large agricultural loans to farmers, thus protecting the family farm as a basic and competitive economic unit. Additionally, the Buers did not lose their remedial right of first refusal but rather were offered and purchased the farm at a fair market price from ASB.

Finally, we reject the Buer's claim that they were damaged by not having the opportunity to purchase an undivided one-half interest at the time ASB offered to purchase it from ISBM. First, it is not clear that the purchase price between ISBM and ASB was for fair market value. The $150,-500 purchase price was only part of a larger loan agreement between the banks involving the whole Buer family, including an agreement that ISBM would hold participation interests in new, fully insured loans made to the Buer children. Second, allowing the Buers to purchase the one-half interest at the price paid by ASB would amount to a windfall, especially in light of the substantial debt forgiven when the loans were restructured.

We conclude the Buers had no statutory right of first refusal in the sale between ISBM and ASB.

### DECISION

Affirmed.